MOLONEY ELECTRIC COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96076. Promulgated June 13, 1940.

*C. M. Trammell, Esq., Donald McGovern, Esq.,* and *James C. Thompson, C. P. A.,* for the petitioner.

*Carroll Walker, Esq.,* and *R. P. Hertzog, Esq.,* for the respondent.

82

OPINION.

MELLOTT: The first question is: Did the Commissioner err in disallowing the deduction of $4,150.52? Petitioner, like the taxpayer in *Robert Gaylord, Inc.*, 41 B. T. A. 1119, claims that the deduction

should be allowed as a loss not compensated for by insurance or otherwise; as an ordinary and necessary expense paid or incurred during the taxable year in carrying on its business; or as a debt ascertained to be worthless and charged off. These allegations are denied in the respondent's answer and he makes substantially the same argument as advanced by him in the *Gaylord* case.

It is unnecessary to repeat what was said in that case. The same conclusion must be reached under the facts before us and it must be, and is, held that the claimed deduction should be allowed under section 23 (a) of the Revenue Act of 1936 as an ordinary and necessary business expense. Brief reference may appropriately be made, however, to some of the evidence relied upon by this petitioner which is not identical to that which was before us in the *Gaylord* case.

Petitioner's president testified that he attended some of the meetings being held in connection with the contemplated absorption by First National of Franklin-American. He stated that the president of the Clearing House Association "presented a very gruesome picture of what was happening here in reference to the Franklin-American * * *"; that his company had on deposit in three banks in St. Louis $295,000; and "we wanted those deposits safe-guarded * * *." "We did not want a calamity to happen in the City of St. Louis if the Franklin Trust Company closed its doors the following morning * * *." "Another thing was that it would materially affect our business in the city of St. Louis and surrounding territory." "The greatest consideration that I had was to protect my own interests that I had in the banks of St. Louis and I had in my business."

The testimony submitted in this proceeding upon this issue was not as extended as the evidence adduced in the *Gaylord* and other cases involving a similar issue tried at substantially the same time. However, we think judicial notice may be taken of the fact that the period was a very critical one in the banking situation generally. As stated by us in the *Gaylord* case, bank failures in 1931 were twice as numerous as they had been during the preceding year, four times as numerous as during the year 1929, and six times as numerous as during the average year in the predepression era. All of this was known to the St. Louis business men and was forcefully brought to their attention by the president of the clearing house at the hastily called meetings which the president of this petitioner attended.

The expenditure of the relatively small sum of money by the petitioner under the circumstances disclosed by the present record, supplemented by the matters as to which we have taken judicial notice, constituted, we think, an ordinary and necessary expense of carrying on its trade or business. We hold, therefore, that the respondent erred in denying the claimed deduction.

The remaining question is: May petitioner be allowed any "credit" under section 26 (c) (2) of the Revenue Act of 1936,[1] against its "undistributed profits tax?"

The deficiency notice indicates that petitioner's net income for 1935, as disclosed by its return, was $183,667.02 and, after giving effect to the adjustments made by the Commissioner, was $205,569.16. The principal adjustment—the disallowance of $22,650.12 of the amount claimed as depreciation—is now conceded by the respondent to have been erroneous; so the net income as adjusted (after giving effect to a deduction of $747.98 allowed by the Commissioner but not claimed by petitioner in its return) was $184,415. The amount of the "net earnings" for said year, as defined in the trust agreement, was not shown. The deficiency notice also indicates—the returns not having been introduced in evidence—that petitioner's net income for 1936 was $477,633.31. Giving effect to the adjustments made by the respondent, other than the disallowance of a portion of the depreciation, it seems that petitioner's net income for 1936, as adjusted, was $482,105.83.

It is alleged in the petition that the largest amount of bonds at any time outstanding during the year 1936 was $690,500; that 2 percent thereof, or $13,810, was "required to be paid to the trustee or set aside out of earnings and profits of the taxable year 1936 by virtue of the provisions" of the trust agreements; that the "net earnings for the taxable year 1936" amounted to $477,633.31; that 20 percent of the excess over $320,000 ($157,633.31) or $31,526.66 "is required by the provisions of said Trust agreement * * * to be paid or set aside within the taxable year for the purpose of retiring said outstanding debenture bonds"; and that petitioner is therefore entitled to an aggregate credit under section 26 (c) (2), *supra*, in the amount of $45,336.66. These allegations are denied in the respondent's answer.

Consideration will first be given to petitioner's contention that it is entitled to credit in the amount of $31,526.66. It will be noted that the statute requires: (1) That there be a written contract executed prior to May 1, 1936; (2) that it contain a provision expressly

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

* * * * * * *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

* * * * * * *

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

dealing with the disposition of earnings and profits of the taxable year; (3) that it require a "portion of the earnings and profits of the taxable year" (a) to be paid within the taxable year in discharge of a debt, or (b) to be irrevocably set aside within the taxable year for the discharge of a debt; and (4) when the above conditions are met then the credit may be given to the extent that such amount (a) has been paid, or (b) has been set aside. The first requirement has been met. It is doubtful, however, if the second has; for, as pointed out by the respondent, it deals with the disposition of earnings and profits of a preceding year rather than of the taxable year. Assuming *arguendo* (though not deciding) that the second requirement has been met, we pass to a consideration of the others.

It would require a strained construction to hold that either the third or the fourth requirement has been met. Petitioner contends that the facts bring it "within the letter and the spirit of the section." It may be that it is within the spirit; but that is not sufficient. "A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. Nothing that was said in *G. B. R. Oil Corporation*, 40 B. T. A. 738, can be construed as putting any lighter burden upon a taxpayer seeking the credit under the statute in question. It is our duty to construe the statute precisely as written; and unless the petitioner brings itself within its terms it can not prevail.

There is nothing in the trust agreement requiring "a portion of the earnings and profits of the taxable year" either to be paid or to be set aside "within the taxable year for the discharge of a debt." Petitioner does not contend that payment was required. Upon brief it says: "The provisions of the agreement certainly did not require payment out of 1936 net earnings to be made until June 1, 1937. Therefore 3 (a) (which it has phrased substantially as set out above) is not met." It contends, however, that the contract "did require the company to irrevocably set aside within the taxable year 20% of the net earnings in excess of $320,000 for the discharge of the bonded indebtedness." We do not agree. The contract requires that when the net earnings are determined from the audit (which is "to be made at the close of each calendar year") "which, in no event, shall be later than the first day of April, said amount shall forthwith be set aside in a separate fund." This provision of the contract is clear and unambiguous and is susceptible of no other construction than that no irrevocable setting aside was required to be made earlier than April of the succeeding year. We think it is clear, therefore, that neither requirement 3 (a) nor 3 (b) is met.

It has been pointed out that when all of the requirements have been met, credit is to be allowed to the extent that the earnings and

profits have been paid or set aside within the taxable year. Petitioner argues that the contract required an irrevocable setting aside and that it has gone even further than required. It says: "Besides being set aside, the sum was actually paid to the Trustee under the agreement." Our holding to the effect that the contract did not require an irrevocable setting aside within the taxable year of any portion of the earnings of the taxable year leaves no major premise upon which the minor may be based. But if we have erred in so holding, still petitioner can not prevail. There is no evidence upon which to base a conclusion that any portion of the amount paid in 1936 was paid because of petitioner's obligation to apply 20 percent of its net earnings in excess of $320,000 toward the reduction of its indebtedness. The record does not disclose whether the payment was made near the close of the year when it was apparent that the earnings would be in excess of $320,000 or whether it was made earlier in the year when the earnings were much less than that amount. It seems to be obvious that the payment was made under the option contained in section 3 of article III rather than because of any requirement of the contract that it be made. In any event, in the absence of any showing as to when the payment was made and in the absence of any showing as to the amount of net earnings at that time, it is impossible to find that the payment was made because of the requirement that 20 percent of the net earnings in excess of $320,000 be applied upon the debt.

The instant proceeding is distinguishable upon its facts from *Strong Manufacturing Co.*, 41 B. T. A. 1273. In the cited case-it was found that "compliance with * * * [the] conditions" of the statute was questionable in only one respect. It was held that "the 'application' of the designated portion of the earnings and profits required by the contract" was "to be considered as operative 'as of' the taxable year and therefore as the irrevocable setting aside contemplated by the statute." The contract in that case required the taxpayer to "apply forty percent (40%) of its net earnings * * * upon the unpaid balance of said purchase price." The findings show that "since it appeared (in October of 1936) that petitioner's profits would be such that 40 percent thereof would be in excess of the amount required to discharge the mortgage in full, it was decided to make the payment at that time." In other words, the taxpayer recognized that under its contract its creditor had an equitable lien, during the taxable year, upon 40 percent of its net earnings. But in the instant proceeding the creditor had no equitable lien upon petitioner's earnings until and unless they should be in excess of $320,000. It has been pointed out above that the evidence is not sufficient to establish this fact; and without it the

rationale of *Strong Manufacturing Co.* can not be applied. It is therefore held that the Commissioner did not err in denying petitioner's claim for a credit of $31,526.66 under section 26 (c) (2), *supra.*

Petitioner's claim for credit in the amount of $13,810 is in a different category. The contract required it to "pay to the Trustee on the first day of June * * * a sum equal to 2% of the largest amount of debenture bonds at any time outstanding." Petitioner has given this expression the construction least favorable to it, construing it as if it read "the largest amount * * * at any time *during the taxable year* outstanding." Here, then, was a contract executed by the corporation prior to May 1, 1936, requiring a definite amount to be paid within the taxable year in discharge of a debt and the amount was so paid. Can it be said that the provision "expressly deals with the disposition of earnings and profits of the taxable year"? If so, was it incumbent upon petitioner to show that payment was actually made out of "the earnings and profits of the taxable year"? If the last question be answered in the negative, then it is unimportant; but if in the affirmative, then it must be held that petitioner has made the required showing, for its president testified that $240,000 of its earnings for 1936 was used in liquidating its bonded indebtedness. But the first suggested question can not be answered so readily.

In *Michigan Silica Co.*, 41 B. T. A. 511, it was pointed out that bonds evidence a debt within the meaning of the section now under consideration. It was therefore held that a provision of the trust indenture requiring the taxpayer to pay to the trustee a definite amount for each ton of sand produced and sold by it should be construed as a provision expressly dealing with the disposition of earnings and profits of the taxable year even though the provision did not expressly use the term earnings and profits. The cited case, though not determinative of the present issue, makes a "practical" application of the section. Cf. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1. A similar application should be made in the instant proceeding, though the burden upon petitioner to show that it comes within the precise language of the statute must be met. *New Colonial Ice Co.* v. *Helvering, supra.*

The paragraph of the trust agreement set out in our findings does expressly deal with the disposition of earnings and profits of the taxable year even though the provision requiring the payment of a sum equal to 2 percent of the largest amount of outstanding bonds, taken from its setting, makes no specific reference to earnings and profits. It is apparent, however, the parties intended that petitioner's net earnings and profits should be applied as follows: The first $320,000 toward the payment of the bonds and as dividends upon the outstanding stock; 20 percent of the excess over that amount toward the pay-

ment of the bonds; and that the balance should be added to surplus or paid out as additional dividends. This, we believe, is a practical interpretation of the whole paragraph. So construed, it must be held that the payment was made out of the earnings and profits of the taxable year, pursuant to the provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year, and that therefore it comes literally within the terms of the statute.

The Commissioner should have allowed petitioner a credit of $13,810 under section 26 (c) (2), *supra*.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

DISNEY dissents.

LEECH, dissenting: I do not think that the facts here permit the application of any rule other than that recognized by the Board in *Strong Manufacturing Co.*, 41 B. T. A. 1273, and *Michigan Silica Co.*, 41 B. T. A. 511. That rule requires that petitioner be sustained on the second issue.

MURDOCK agrees with this dissent.