BELLE-VUE MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99564. Promulgated December 6, 1940.

*Norman Block, Esq.*, for the petitioner.
*Lloyd W. Creason, Esq.*, for the respondent.

14

STERNHAGEN: Because of petitioner's financial difficulties, substantially all of its shares were in 1929 transferred in trust to represent-

atives of its principal creditors with the voting rights. The same persons formed a creditors' committee and took the control and management of the business. In 1934 the trust was continued for a five-year period, and the creditors agreed to an equal extension of time for payment of the debts. After sustaining steady losses, petitioner made a profit in 1933 and 1934, but made no payment on its notes. It made profits in 1936 and 1937, and paid $53,100.73 and $77,906.55, respectively, on the notes. It claimed a credit of $53,100.73 for 1936 and of $56,920.94 (the amount of its net income) for 1937 in the computation of its undistributed profits tax. It assails the Commissioner's disallowance of these credits.

By section 14 of the Revenue Act of 1936, a surtax is imposed upon the net income of corporations. By section 26 (c) the following credits are allowed:

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. * * *

Petitioner invokes both subsections. It contends that a prohibition against dividends was implicit in the trust agreement and the 1934 contract with the creditors extending the time of payment, the shareholders having been told not to expect anything for many years, if ever; that these agreements were made to avoid a receivership; and that the creditors' control, given to assure a payment of debts, precludes dividends until the debts are paid. No provision of the contract, however, "expressly deals with the payment of dividends", or "with the disposition of earnings and profits", which is the condition upon which the statute bases the credit. As petitioner suggests, the term "earnings and profits" need not appear literally in the contract if it is clear from other terms that debt payments from earnings and profits are required. *G. B. R. Oil Corporation*, 40 B. T. A. 738; *Michigan Silica Co.*, 41 B. T. A. 511 (on review C. C. A., 6th Cir.). But the present contract, instead of forbidding dividends, expressly contemplates the possibility of their payment, and provides that the trustees upon receipt must turn them over to the original shareholders. Petitioner calls this provision a precautionary measure and points to the improbability that the creditors would permit a dividend when they held unpaid notes of large amount and petitioner was in such a precarious financial condition.

To support the statutory credit, a contract is to be construed according to its legal effect rather than in the light of an assumed business policy. In *Cooperative Publishing Co.*, 40 B. T. A. 466 (on review C. C. A., 9th Cir.), the exemption of section 14 (d) (2) was denied to a corporation which contended that its condition was equivalent to receivership because of insolvency and a proceeding to foreclose its assets. In *Moloney Electric Co.*, 42 B. T. A. 78, 85 (on review C. C. A., 8th Cir.), the credit of section 26 (c) (2) was denied, the Board saying:

Petitioner contends that the facts bring it "within the letter and the spirit of the section." It may be that it is within the spirit; but that is not sufficient. * * * It is our duty to construe the statute precisely as written; and unless the petitioner brings itself within its terms it can not prevail.

It is probably true that, under the circumstances and consistently with the spirit of the trust agreement and the contract extending the time for payment of the notes, no dividends would be declared by petitioner because the controlling trustee-creditors would not permit it; and that a request for such permission "would have been a vain and purposeless thing." *Kilby Steel Co.*, 41 B. T. A. 1237. But petitioner never agreed to refrain from declaring a dividend. Its shareholders simply placed the control of the business and finances in the hands of others. Even if it be treated as party to this arrangement by its agreement in the debt extension contract to implement the trustee-creditors' control, still its commitments did not expressly involve dividends. Petitioner's directors, as good business policy, would probably have refrained from paying dividends. Petitioner contracted not to borrow without the creditors' approval, and to sell its assets if an offered price would have covered its debts; but this was not a contractual restriction on the payment of dividends. Even though its financial condition was an effective obstacle to any such payment, the statute provides only for a contractual inhibition. By the trust agreement the shareholders gave the creditors' committee a free hand to act for the betterment of the corporation's condition and the payment of its debts; the trustees acted for the shareholders in voting the shares. The directors, however, had full power to declare a dividend if the petitioner's condition warranted it. It was the financial condition and not a contractual prohibition that prevented the payment of a dividend. Section 26 (c) (1) provides for no credit in such case.

In *Page Oil Co.*, 41 B. T. A. 952, 964, the contract expressly prohibited the payment of a dividend until certain debts were paid, and provided further that if a dividend should be declared, the debts would immediately become due. It was held that that was not a provision for election, but that such a declaration of dividend would

have been a violation of the contract. To the same effect is *Auto Interurban Co.*, 40 B. T. A. 161. *Sutcliffe Co.*, 41 B. T. A. 1009, recognized the effectiveness of a contract prohibiting dividends, and held that it was not to be disregarded because the parties had by later agreement reduced the scope of the restriction. In *Monroe Abstract Corporation*, 41 B. T. A. 5, the taxpayer expressly agreed to deposit 5 percent of income in a fund to cover losses; the credit was denied. In *Davison-Joseph Campau Realty Co.*, 41 B. T. A. 675, a bylaw restricting dividends was held not to support a credit. In *Thibaut & Walker Co.*, 42 B. T. A. 29, the contract was between the taxpayer and its four shareholders, and, unlike petitioner's, did expressly limit dividends. The Board held it insufficient to support the credit, saying:

Obviously the corporation was a party to the above agreement and the agreement contains a provision which expressly deals with the payment of dividends. Also, a distribution in excess of 10 per cent during the taxable years would have violated the provisions of the agreement. Nevertheless, it is our opinion that section 26 (c) (1) does not apply. The corporation did not contract that it would refrain from paying dividends in excess of 10 per cent. On the contrary, it was the four individuals who agreed that as directors they would vote in favor of a dividend policy limiting the dividends to 10 per cent and requiring that the next $15,000 of earnings be added to capital. Congress intended to give a credit to a corporation only where the corporation had bound itself not to pay a dividend. This is reasonably clear from the language of the section. The legislative history indicates that Congress was trying to relieve situations in which a corporation had contracted with creditors to retain its earnings for their protection, but did not have in mind contracts such as this one, entered into by parties inside the corporate group to refrain from declaring dividends for their own mutual benefit.

For similar reasons petitioner is entitled to no credit by virtue of section 26 (c) (2). Although, as has been said, the term "earnings and profits" need not appear literally in a contract to support the claim for credit, *Joell Co.*, 41 B. T. A. 825; *Moloney Electric Co.*, *supra; G. B. R. Oil Corporation, supra; Michigan Silica Co., supra;* nevertheless, as said in the *G. B. R. Oil Corporation* case:

the basic intent of Congress seems to have been to include in the provision only contracts which inevitably require in their performance a drawing on current earnings, thus removing current earnings as a source of dividend payments.

Petitioner was not bound by contract to apply current earnings to satisfaction of its debts. In fact, in 1934 it made a profit of $15,-630.47 and paid nothing on the debts. A mere probability that some or all of that amount would be so used later would be insufficient, for what the statute prescribes is an express written contractual provision that "earnings and profits of the taxable year * * * be paid within the taxable year in discharge of a debt * * *." This provision has not been loosely applied. Cf. *Moloney Electric Co.*,

*supra; Hub Clothing House, Ltd.*, 39 B. T. A. 900. In petitioner's case no payment or setting aside was specifically required for any year; the directors were free to exercise their untrammeled judgment.

Petitioner relies only on the "spirit" of the contract and the intention of the shareholders that the creditors' committee use all earnings to pay debts. It demands a construction of the contract as including a restriction upon dividends by implication from the circumstances of its financial condition. But it refrained from such an express restriction, and the statute is clear that only an express provision is to be recognized for the purpose of the credit. "The argument based upon equity is of no avail where there is no statutory provision allowing a credit." *J. A. Dougherty's Sons, Inc.*, 42 B. T. A. 892.

The Commissioner's determination must be approved.

Petitioner contends that chapter 22, article 5A, section 1179, of Michie's North Carolina Code (1939), which prohibits the payment of a dividend by a corporation if its debts exceed two-thirds of its assets, is sufficient to entitle it to the credit. Such a contention has been rejected, *Commissioner v. Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46; *Crane-Johnson Co. v. Commissioner*, 311 U. S. 54. Petitioner suggests, but does not argue, that section 26 (c) is unconstitutional. The constitutional validity has been sustained in *Commissioner v. Northwest Steel Rolling Mills, Inc., supra*.

The Commissioner's determination is sustained.

*Decision will be entered for the respondent.*