First National Bank, Montoursville, Pennsylvania v. Commissioner.
First Natl. Bank v. Commissioner
Docket No. 109058.
United States Tax Court
1943 Tax Ct. Memo LEXIS 450; 1 T.C.M. (CCH) 602; T.C.M. (RIA) 43079; February 13, 1943
*450 1. A part of a debt charged off and deducted in 1936 without tax benefit may not be deducted in the taxable year 1939, in the absence of evidence that such part, or any other part, of the debt actually became worthless in 1939. Section 23 (k) (1), Internal Revenue Code, as amended by section 124, Revenue Act of 1942. 2. A contribution made by a taxpayer bank to aid a failing bank which was refunded in part in a later year, may be excluded from taxable income of the year of refund if the taxpayer did not receive a tax benefit, by way of deduction, in the year in which the contribution was made. Leon Meltzer, Esq., 213 S. Broad St., Philadelphia, Pa., for the petitioner. Paul E. Waring, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax for the year 1939 in the amount of $459.76. Two issues are presented for decision: (1) Is the petitioner entitled to a deduction of $4,000 for an allegedly worthless debt of its former president and director; and (2) Does the amount of $900 which was received by the petitioner in 1939 as a refund of part of contributions made in a prior year to aid another bank in the community *451 constitute taxable income of the petitioner for the year 1939. Findings of Fact On December 17, 1932, The Peoples Bank and Trust Co. of Montoursville, a Pennsylvania banking corporation (hereinafter referred to as the Peoples Bank), was consolidated or merged with The First National Bank of Montoursville, a national banking association, (hereinafter referred to as the old National Bank), which had been engaged in business at Montoursville, Pennsylvania, since 1903. The consolidation was effected under the charter and under the name of the old National Bank, and the consolidated association, which is the petitioner herein, took over the assets and assumed the liabilities of the consolidating banks. The petitioner filed an income and excessprofits tax return for the calendar year 1939 with the collector for the twelfth district of Pennsylvania. The president of the old National Bank was C. E. Bennett who was also a director thereof. He became the president and a director of the petitioner at the time of the consolidation. At the time of the consolidation the old National Bank held promissory notes of Bennett for loans previously made, in the total amount of $12,050. The loans were *452 secured by shares of stock of the Crandall-Bennett-Porter Co. (hereinafter referred to as the Crandall Co.). The stock so pledged as collateral consisted of 689 1/4 shares of the Crandall stock and a certificate for other shares of the stated value of $3,696.25. Bennett was president of the Crandall Co. which, for some years prior to 1932, had been engaged in the manufacture of furniture, but which, by 1932, had discontinued its business activities. The petitioner took over the Bennett notes and the collateral in the consolidation, but, prior to doing so, and pursuant to an agreement between the representatives of the consolidating banks, the old National Bank wrote off $4,000 of the indebtedness and the petitioner set up the balance of $8,050 on its books as an asset. The petitioner filed an income tax return on March 15, 1933, in which it reported items of income and deduction for the entire calendar year 1932. The return disclosed a loss of $17,443.02, but no claim was made therein for a deduction of the $4,000 which was written off by the old National Bank on account of the Bennett indebtedness. Bennett made no payments to the petitioner on his indebtedness of $8,050 in 1933 *453 or 1934, or thereafter. In the years immediately following the consolidation Bennett's financial condition was such that he was unable to meet the demands of the petitioner for payments on his notes or for the deposit of additional collateral. Early in 1934 he resigned as president and director of the petitioner and shortly after his resignation he made an assignment to his nephew and other relatives of 102 shares of the capital stock of the petitioner contrary to a preexisting oral understanding with the petitioner to turn such shares over to it, in the event of his resignation, in order to protect it from loss on his loans. Upon learning of such assignment, the petitioner and other creditors of Bennett, on August 31, 1934, filed a petition in bankruptcy against Bennett in the District Court of the United States for the Middle District of Pennsylvania, and Bennett was adjudicated a bankrupt in the latter part of 1934. The petitioner, in that proceeding, asserted a claim against Bennett of $12,175.24, secured by 725 shares of Crandall stock, and other creditors asserted claims against him of $4,394, secured by 50 shares of Crandall stock and stock of two other corporations. After *454 the adjudication in bankruptcy the petitioner continued to hold the Crandall stock as collateral for the Bennett indebtedness. In 1936 the petitioner was the holder of a mortgage on the factory building and land of the Crandall Co. for $15,000, and during 1936 it attempted to negotiate a sale of such property to the Lycoming County Barrel Co. for a price of $35,000. The petitioner anticipated that, if the sale were consummated, it would realize enough to satisfy the mortgage and discharge Bennett's entire indebtedness by realization on the stock up with it as collateral. At the close of the year 1936 the National Bank examiners were of the opinion that a part of the Bennett indebtedness of $8,050 would be realized from the proposed sale of the Crandall Company's properties, and they directed that $4,050 of the indebtedness be retained on the books of the petitioner and that $4,000 thereof be charged off. The petitioner charged off the amount of $4,000 on December 31, 1936 and it claimed a deduction of that amount in its income tax return for the year 1936. The return contains the following explanation of the deduction claimed: The note, after curtails in prior years, stands with *455 interest, at about $8,000.00. Note was secured by maker's 72 shares of stock in Crandall-Bennett-Porter Co., a manufacturing concern which now has not operated for a few years, and the entire assets of which a sale is about to be consummated for a price that will yield for the C. E. Bennett stock or his interest applicable to this debt not more than $4,000.00. C. E. Bennett maker, has no other property interests, having recently gone through bankruptcy. The petitioner's income tax return for the year 1936 disclosed a loss of $27,378.18 after the deduction of the said amount of $4,000. In 1937 the proposed sale of the Crandall property to the Lycoming County Barrel Co. failed of consummation and at all times thereafter the petitioner considered the Crandall stock as worthless. During the year 1937 the petitioner discovered that Bennett had conveyed his interest in certain timber land to F. A. Weaver, his nephew, and, in that year, upon its insistence, Weaver conveyed the land to the petitioner. At the time of the conveyance Weaver offered to pay the petitioner $1,000 for Bennett's interest in the land, but the petitioner rejected the offer. On July 26, 1937, the National Bank examiners, *456 in a report on the condition of the petitioner bank, stated that the Crandall stock then held by the petitioner as security for Bennett's indebtedness of $4,050 had no value and that the timber land acquired by the petitioner had an estimated value of $1,000. The said examiners authorized a further charge-off of the Bennett indebtedness in the amount of $3,000, and the petitioner charged that amount off on its books on August 26, 1937. Later in 1937 the petitioner decided to acquire the factory building and land of the Crandall Co. and it determined that this could be accomplished in a more economical way by purchasing the stock of that company rather than by resorting to a foreclosure under its mortgage. The petitioner thereupon caused the Crandall stock to be advertised for sale at public auction and, on October 2, 1937, at a sheriff's sale, the petitioner, the only bidder, purchased 792 shares of such stock for a nominal price of $1.00. The said stock was worthless at the time of the purchase. After thus acquiring the stock the petitioner sold the factory building and land for $15,000, the face amount of its mortgage, but it did not enter the stock on its books as an asset. The *457 petitioner filed an income tax return for the year 1937 on which it claimed a deduction of $3,000 on account of the Bennett indebtedness, and in which it made the following statement in explanation thereof: The remaining balance on this note in 1937 was $4,000, it having been written down to such an amount in 1936 after the maker went into bankruptcy; the $4,000 being the then best estimate of 72 shares of the stock of Crandall-Bennett-Porter Company which was the security for the note. But in 1937, no sale of the stock and no sale or market for the few remaining assets of Crandall-Bennett-Porter Company being had or thought likely to be had, the National Bank Examiner in 1937 orders this note written down from $4,000 to $1,000. The net income disclosed by the petitioner's said income tax return for 1937, after deduction of the amount of $3,000 on account of the Bennett indebtedness, was $1,430.57. During the years 1936 and 1937 Bennett had no assets other than the shares of Crandall stock which were held by the petitioner as collateral for his loans and the interest in the timber land which was conveyed to the petitioner in 1937, as hereinabove stated. He had no income during *458 those or subsequent years and he lived on the proceeds of a life insurance policy which he had surrendered. After the adjudication of bankruptcy in 1934, Bennett gave the petitioner his promissory notes for the amount of the indebtedness which was carried by it on its books, and such notes were renewed by him at ninety day intervals. None of such notes were given for any loans made after the adjudication of bankruptcy. The liability ledger, covering all notes which go through the petitioner's bank, shows that at February 1, 1937 the petitioner held his notes for the amount of $4,050, and that from September 13, 1937 to June 29, 1939, it held his notes for the amount of $1,050. On June 29, 1939, the petitioner sold the timber land hereinabove mentioned to Weaver for the sum of $1,000, and on that date it credited the amount of $1,000 on the Bennett indebtedness and charged off the balance of $50 as worthless. In its income tax return for the year 1939 the petitioner claimed a deduction of $4,050 on account of the Bennett indebtedness; and, in determining the deficiency the respondent disallowed $4,000 of the deduction so claimed. Prior to the consolidation of the old National Bank *459 and the Peoples Bank those banks contributed the amounts of $900 and $600, respectively, to a fund which was collected by the First National Bank of Hughesville in order to aid the Picture Rocks National Bank which was engaged in business at Picture Rocks, about fifteen miles from Montoursville, and thereby prevent a run on the banks in the locality. Those amounts were written off the books of the contributing banks prior to the consolidation, the $900 contributed by the old National Bank being written off-on March 12, 1932. On March 15, 1933, the petitioner filed an income tax return which included items of income and deduction for the entire calendar year 1932. The said return included deductions for bad debts in the amount of $17,960.07 and it reported a "net taxable loss" of $17,443.02. The deductions for bad debts included an item of $900 described in the return as "Picture Rocks National Bank - Defunct - Assessment," which was charged off at the direction of the National Bank examiners. During the year 1939 the petitioner received from the First National Bank of Hughesville the sum of $1,050, which was a refund of 70 per cent of the amounts of $900 and $600 which had been *460 contributed by the old National Bank and the Peoples Bank to the Picture Rocks National Bank prior to the consolidation. The petitioner reported the receipt of the said refund in its income tax return for the year 1939 and included $150 thereof in its taxable income and $900 thereof in reported non-taxable income. The respondent included the amount of $900 in the taxable income of the petitioner for the year 1939. Opinion TYSON, Judge: Under the first issue the petitioner claims a deduction for $4,000 of the Bennett indebtedness. Since the submission of the briefs Congress has, by section 124 of the Revenue Act of 1942, amended the statute authorizing deductions for bad debts. Section 23 (K) (1) of the Internal Revenue Code, as amended, provides for the deduction of Debts which became worthless within the taxable year; * * * and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part which becomes worthless within the taxable year, as a deduction. The amendment is effective for taxable years beginning after December 31, 1938, and it applies to the present proceeding. First National Bank in St. Louis, 1 T.C. 370. *461 Under the statute as amended it is plain that if no part of the debt became worthless in 1939 the petitioner's claim must be rejected. Bennett was adjudicated a bankrupt in 1934 and although he then owned 102 shares in the petitioner which admittedly had value, there is no proof of his discharge or of the amount realized by the creditors from the 102 shares. However, in 1936 petitioner continued to hold the Crandall stock as collateral and, through a proposed sale of the real estate of that company, there was some expectation of realizing something on the Crandall stock. The National Bank examiners anticipated a possible recovery of $4,050 on the indebtedness and they, accordingly, authorized a charge-off of $4,000 thereof. In 1937 after petitioner had acquired from Bennett's nephew Bennett's interest in the tract of timber land then estimated to be worth $1,000 and after it became known that the proposed sale of the real estate of the Crandall Co. had fallen through, the bank examiners permitted a further charge-off of $3,000, leaving a balance of $1,050 on the indebtedness. The evidence shows definitely that in 1937 the Crandall stock was absolutely worthless and that thereafter *462 Bennett had no assets or income and he was obliged to live on the proceeds of some surrendered life insurance. The evidence fails to show that petitioner acquired the interest in the timber land in 1937 as collateral, so we must assume that it was acquired unconditionally. The record leaves no doubt that in 1937 that property was not worth more than $1,000 and it was then certain that nothing further could be recovered from Bennett. All of the Bennett indebtedness of $8,050 which ever became worthless became so in 1936 and 1937. No part of the indebtedness became worthless in 1939. Petitioner does not deny that $4,000 of the indebtedness became worthless in 1936 or that $3,000 of such indebtedness became worthless in 1937, and such amounts were claimed as deductions in the petitioner's tax returns for those respective years. Apparently its sole and certainly its principal, contention is that since the claimed deduction of $4,000 for the partially worthless debt in its 1936 return did not result in any tax benefit in 1936 it is entitled to deduct that amount in the year 1939 under the tax benefit theory applicable to recoveries on bad debts deducted in prior years. This contention *463 must be denied under the authority of Bank of Newberry, 1 T.C. 374. The second issue is whether the sum of $900 of the $1,050 recovered in 1939 on account of the contributions made to the Picture Rocks National Bank in 1932 should be included in the petitioner's taxable income for the year 1939. The contribution of $900 of the old National Bank was treated on the petitioner's return for 1932 as a bad debt, but it was an ordinary and necessary business expense. See Robert Gaylord, Inc., 41 B.T.A. 1119; Moloney Electric Co., 42 B.T.A. 78, modified 120 Fed. (2d) 617, certiorari denied, 314 U.S. 682. The recovery therefore is not within the exemption provisions of section 22 (b) of the Internal Revenue Code, as amended by section 116 of the Revenue Act of 1942, (Cf First National Bank in St. Louis, supra;Bank of Newberry, supra), but is subject to the rule whereby recoveries of amounts previously deducted are included or excluded from income of the year of recovery according to *464 whether or not the taxpayer received a tax benefit from the deduction in a prior year. Central Loan & Investment Co., 39 B.T.A. 981; National Bank of Commerce of Seattle, 40 B.T.A. 72, affirmed 115 Fed.(2d) 875, Amsco-Wire Products Corporation, 44 B.T.A. 717; Western Adjustment & Inspection Co., 45 B.T.A. 721; Estate of James N. Collins, 46 B.T.A. 765; Cf. Citizens State Bank, 46 B.T.A. 964. The petitioner argues for the exclusion on the ground that no tax benefit was received in 1932. The $1,050 refund received by the petitioner in 1939 represented 70 percent of the original contributions, or $630 of the $900 contributed by the old National Bank and $420 of the $600 contributed by the Peoples Bank. The record does not show that no tax benefit was received in 1932 for the entire $1,050 contributed by the two banks. It does show that the old National Bank deducted its contribution of $900 on its 1932 return and that it reported in such return a net taxable loss in *465 excess of that amount; and, while it appears that the Peoples Bank charged off its contribution of $600 prior to the consolidation, we remain uninformed of the income and deductions of that bank for the year 1932 or any other year. We are unable to say, therefore, that the taxpayer did not receive a tax benefit from the $600 contribution of the Peoples Bank and we therefore approve the respondent's action only to the extent that it included $420 of the recovery in the petitioner's income for 1939. With respect to the contribution of $900 made by the old National Bank, we think that the petitioner has sufficiently shown that it did not receive a tax benefit from the deduction of that amount on its return for 1932, and, under the authorities above cited, we hold that it properly omitted $630 of the recovery from its taxable income for 1939. Decision will be entered under Rule 50.