EDWARD J. MILLER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85083. Promulgated May 10, 1938.

*Robert Ash, Esq.*, for the petitioner.
*Jonas M. Smith, Esq.*, for the respondent.

### OPINION.

HILL: This proceeding is for the redetermination of a deficiency in petitioner's income tax as determined by respondent for the year 1933 in the amount of $3,857.85. The amended pleadings raise the following issues: (1) Whether or not respondent erred in holding that petitioner's salary of $5,000 as president of the board of water works of the city of Louisville is not exempt from Federal taxation; (2) whether or not respondent erred in not allowing as a deduction from income interest paid on borrowed money in the amount of $242.91; (3), (4), and (5), whether or not respondent erred in not allowing as deductions from income the amounts of $5,917.69, $1,901.38, and $1,744.34, of which the first represents expenditures by petitioner on account of loss claims for insurance placed by him, the second represents unearned commissions which had been accrued as income, and the third represents prepaid premiums on canceled insurance policies.

Respondent now concedes issues (1) and (2). Accordingly, on those issues we hold for petitioner.

Issues (3), (4), and (5), relating to deductions claimed by petitioner from gross income, will be considered together.

Petitioner is an individual, residing at Louisville, Kentucky. He is an insurance agent, and in 1933 represented about 12 insurance companies, selling all kinds of insurance, except life insurance. From 1919 to January 6, 1933, with the exception of an intervening period of about six months, petitioner represented the Union Indemnity Co. of New Orleans, as general and local agent.

Petitioner did not send out any advertisements of insurance companies, or advise his customers of the companies in which their insurance would be placed, because he wished to create business for himself and not for any particular insurance company he might happen to represent at the time. His customers first knew what companies had their insurance when the policies were delivered to them. They were not primarily concerned with the companies in which they were insured, but placed their insurance with petitioner because of their confidence in him.

On January 6, 1933, petitioner received a telegram from the home office of the Union Indemnity Co. advising that it had failed. On the same date the Massachusetts Bonding & Insurance Co. agreed to accept all policies of petitioner's customers in the Union Co. for their unexpired terms at pro rata rates. Thereupon all such policies in the Union Co. were canceled and rewritten in the Massachusetts Co.

When the Union Co. failed, certain of petitioner's customers had matured claims against the company under their policies, and petitioner personally paid such claims. In 1933 the claims so paid amounted to $5,917.69. Petitioner paid the claims in order to retain his customers. It had long been petitioner's policy to pay small claims, sometimes when not specifically covered by a policy, rather than to lose the customer's business. Pursuant to such policy petitioner has retained the insurance business of all the customers whose claims he paid, and has since received substantial additional commissions thereon.

Petitioner procured assignments of his customers' claims against the Union Co., and filed them with the receiver. The total amount paid on claims matured under policies and claims for prepaid insurance was $375.78, which petitioner received on August 1, 1936, and reported as income in his tax return for that year.

When petitioner wrote policies of insurance for his customers in the Union Co., he accrued his commissions as income on his books and reported the full amounts as income in his tax return. When the policies were canceled because of failure of the Union Co., $1,901.38 of such commissions had not been earned. When the policies were rewritten at pro rata rates in the Massachusetts Co. and the premiums paid by petitioner, he again accrued as income his

full commissions on such premiums. Due to an oversight, the amount of $1,901.38 was not claimed as a deduction by petitioner in his return for the taxable year 1933.

Under petitioner's arrangement with the Union Co., he was required to pay premiums on the first day of the second month following the month in which the policies were written, whether or not petitioner had collected from his customers. When the Union Co. failed and the policies were canceled, petitioner had prepaid premiums in the amount of $1,744.34. He procured assignments from his customers and filed claims with the receiver for the company, but recovered in that connection only the amount of $375.78 before referred to. Because of an oversight the prepaid premiums were not claimed as a deduction in petitioner's income tax return for 1933.

Substantially the same question is presented here respecting at least two of the deductions claimed by petitioner, and respondent argues that the same question is involved as to the other deduction.

What constitutes an allowable deduction for ordinary and necessary business expense often raises a difficult question under the facts, and quite as often requires a border-line decision. However, it is well settled that expenditures made to protect or to promote a taxpayer's business, and which do not result in the acquisition of a capital asset, are deductible. The difficulty sometimes lies in determining whether the acts done were motivated by a purpose to protect or to promote the business. For a comprehensive discussion of this point, and citation of authorities, see *First National Bank of Skowhegan, Maine*, 35 B. T. A. 876, 884.

During the taxable year, when the Union Indemnity Co. became insolvent and went into receivership, petitioner paid claims of his customers in the total amount of $5,917.69, which had matured under policies written by that company. Petitioner also immediately canceled all policies held by his customers in the Union Co., and reinsured them in the Massachusetts Co. at a cost to himself of $1,744.34. He was under no legal or moral obligation to make such expenditures, but he considered it good business judgment to do so. Such had been his long-established policy, and subsequent events demonstrated the wisdom of his action. He thereby retained the insurance business of all his customers who were affected by the failure of the Union Co. One of those same customers has continued to pay petitioner premiums of approximately $19,000, on which he receives an additional commission of 12 percent gross; and another has continued to place insurance with petitioner amounting to a maximum of approximately one million dollars. The additional commissions which petitioner's action has enabled him to earn are largely in excess of the aggregate of his expenditures. Obviously petitioner's purpose was to protect and promote his business. Petitioner so testified, and

we think his testimony is not incredible. It is supported by the surrounding facts and circumstances, and there is no evidence of any other motive.

Respondent lays stress upon the fact that petitioner was under no legal obligation in the premise, but made the expenditures voluntarily. This, we think, is immaterial. Many expenditures made without legal compulsion are deductible, such as insurance premiums on business property, bonuses to a taxpayer's employees, donations resulting in business benefits, and numerous others. In *Louisiana Jockey Club, Inc.*, 13 B. T. A. 752, the petitioner, without legal obligation, paid a note which had been assumed by the city of New Orleans as a part of the purchase price of land. The payment was made by the taxpayer in order to obtain immunity from interference by city authorities with the conduct of its business, and thus was made to protect and promote its business. This Board held that the amount so paid was a legal deduction from gross income as an ordinary and necessary business expense.

Respondent further contends that the amounts in controversy were expended by petitioner in order to retain the good will of his customers; that good will is a capital asset and expenses incurred because of it are not deductible, citing *Washburn* v. *National Wall Paper Co.*, 81 Fed. 17. We are unable to accept the premise of respondent's argument. By the expenditures in question, petitioner acquired no capital asset in the form of good will beyond the extent, if any, by which his good will incidentally was thereby benefited. And we think an expense deduction otherwise allowable is not to be denied merely because incidentally it affects good will. Furthermore, if the expenditures were made *to retain* good will, as respondent contends, then the purpose was to protect—that is, to prevent the destruction of—a capital asset, and so come within the allowable class.

In *Welch* v. *Helvering*, 290 U. S. 111, cited in respondent's brief, the taxpayer paid portions of the claims of former customers of a bankrupt corporation, of which he had been secretary, in order to strengthen his individual standing and credit, and to reestablish business relations with the corporation's former customers. The Court held that such expenditures were not deductible as ordinary and necessary business expenses. The present proceeding, in our opinion, does not come within the doctrine of the *Welch* case. There the expenditures were made to acquire, and not to retain or protect and promote the taxpayer's business. Cf. *First National Bank of Skowhegan, Maine*, *supra*, at page 884.

For the reasons indicated, we hold that petitioner is entitled to deduct from gross income for the taxable year the amounts of $5,917.69 and $1,744.34 hereinabove referred to.

The remaining deduction claimed by petitioner would, under respondent's contention, be controlled by our decision above in respect of the other two deductions. However, we prefer to rest our conclusion upon a slightly different basis. Petitioner accrued on his books and reported in his tax return as income the full amount of commissions due him on all policies written by the Union Co. When those policies were canceled the amount of $1,901.38 represented unearned commissions. The policies were rewritten in the Massachusetts Co., and petitioner again accrued on his books and reported as income the full amount of his commissions thereon. He himself paid the premiums to the latter company, and was unable to collect the refundable premiums from the former company, except a small amount received in 1936 and reported as income in his tax return for that year. Thus, the amount of $1,901.38, representing the same earned commissions, was twice included in petitioner's taxable income. To that extent his income was overstated, and to correct the error, he is entitled to a deduction in the amount claimed.

Respondent contends that the evidence is insufficient to show that the amount was included in petitioner's income twice, and says that, because petitioner voluntarily paid the premiums on the new policies in order to retain the good will of his customers, he is not entitled to the deduction. The latter point we have discussed above. As to the first point, from a careful consideration of the evidence of record we think it is clear that petitioner did in fact twice include the amount in his reported income. He so testified, and his testimony is uncontradicted. His explanation of the transaction seems to us to be reasonable.

*Judgment will be entered under Rule 50.*