Raymond M. Hessert v. Commissioner.
Hessert v. Commissioner
Docket No. 107336.
United States Tax Court
1943 Tax Ct. Memo LEXIS 346; 1 T.C.M. (CCH) 932; T.C.M. (RIA) 43187; April 22, 1943
*346 Expenditure of $9,050 by petitioner in 1937 to retire an indebtedness of a corporation of whose stock he owned 80 per cent held not a deductible expense. Expenditure of $3,580.30 by petitioner in 1937 for legal services rendered in defending a patent infringement suit against such corporation held not an expense deductible by petitioner. Expenditure of $2,319.70 by petitioner for legal services rendered in negotiating and drafting a contract between petitioner and Remington Rand, Inc. whereby petitioner individually was to receive royalties on a patent held a deductible expense under section 23(a) of the Revenue Act of 1936 as amended by section 121(a)(2) of the Revenue Act of 1942. Robert Ash, Esq., for the petitioner. Harry L. Brown, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion This proceeding involves an income tax deficiency of $3,536.04 determined by respondent against petitioner for the calendar year 1937. The issues presented are whether or not petitioner is entitled to the following deductions from gross income: (1) $9,050 paid by petitioner on an obligation of the National Perforator Co. Inc.; (2) $3,580.30 paid by petitioner for legal services *347 rendered in defending a patent infringement suit brought against the National Perforator Co. Inc., a corporation in which petitioner owned the controlling stock; and (3) $2,319.70 paid by petitioner for legal services rendered in negotiating and drafting a contract between him and Remington Rand Inc. Findings of Fact Petitioner is an individual residing in Audubon, New Jersey. He filed his Federal income tax return for 1937 with the collector of internal revenue, First New Jersey District, Camden, New Jersey. Petitioner started in the business of manufacturing perforating and endorsing machines used by banks in perforating and endorsing checks. Subsequently and prior to 1929 he took in a partner by the name of John A. Quinn who then acquired a 20 per cent interest in the resulting partnership known as National Perforator Co. (hereinafter referred to as the partnership). Quinn was not actively engaged in the partnership, but lent financial support. In October 1928 petitioner, in his own name, applied for a patent on a photo copying machine. The patent was issued to petitioner in 1933. The experimental work prior to the application for this patent was done at the partnership's plant. *348 In the latter part of 1928 the partnership commenced to manufacture photo copying machines and the first machine was sold in 1929. In March 1929 The National Perforator Co. Inc. (hereinafter referred to as the corporation) was incorporated under the laws of Pennsylvania with a capital stock of 50 shares having a par value of $100 a share. In exchange for the assets of the partnership the corporation issued 40 shares of its stock to petitioner and 10 shares to Quinn and assumed the partnership's liabilities. In the exchange the corporation was given "the privilege of applying for and/or owning the patents upon any article manufactured". Among the list of assets acquired by the corporation from the partnership was an "Application for patents $25,000". In the balance sheets on its Federal income tax returns for the years 1929 through 1936 the corporation included under the asset, "patents", an amount of $25,000. On its 1937 return it included that item in its balance sheet at the beginning of the taxable year, but excluded it entirely therefrom at the end thereof. The corporation manufactured photo copying machines from 1929 to 1930 and thereafter from 1935 when the hereinafter mentioned *349 suit was terminated to 1937. From 1929 through 1936 the corporation paid petitioner a salary ranging from $3,000 to $4,700 a year. In 1930 a patent infringement suit was commenced by George L. McCarthy and the Recordak Corporation, a subsidiary of Eastman Kodak Company, against the corporation. Petitioner was not made a party defendant to this suit. In March 1935 this suit was decided in favor of the corporation. The corporation was represented by an attorney whose legal fees petitioner agreed to pay if the corporation did not do so. The attorney recognized the corporation as being primarily liable for his fees. Through the attorney's instigation Dunn and Bradstreet, or a similar agency, had investigated the corporation and found it to be financially irresponsible. One of the liabilities of the partnership assumed by the corporation was an obligation to the Second National Bank of Philadelphia on a note in the amount of $8,500. On May 23, 1929, the corporation borrowed $10,000 from that bank giving a new note therefor with John A. Quinn as sole endorser thereon and used part of the loan to retire the old $8,500 note. Quinn died in 1930 and his wife, Cecelia M. Quinn, acquired his *350 10 shares of stock in the corporation. In May 1931 the bank because of the loss of Quinn's endorsement required Cecelia M. Quinn to execute a new note to it in the amount of $9,300, the then reduced principal amount of the $10,000 corporate note. There-upon, the bank delivered the corporate note to Cecelia M. Quinn. From March 1931 to April 1, 1935 four payments of principal totalling $250 were made by the corporation on Cecelia M. Quinn's note and at all times until the balance of $9,050 was paid by petitioner, as hereinafter stated, on this note the corporation paid the interest due thereon. By a contract dated July 28, 1937 petitioner granted to Remington Rand Inc. "the sole and exclusive right to operate, make, use, sell, rent and put to account" the photo copying machine on which he held letters patent for the minimum royalty of $400,000 based on a percentage of gross rentals and sales of the machine. In the contract petitioner represented that the patent was free and clear of any liens or encumbrances. The contract recited that petitioner was obligated to the Second National Bank of Philadelphia and to the attorney who represented the corporation in the patent infringement *351 suit in the total sum of $13,850 and made provision for the payment of these obligations from amounts to be received by petitioner under the contract, other than from an initial payment of $25,000. The provisions as to these obligations, which might in any way be a lien against the patent, were written into the contract at the insistence of Remington Rand Inc. Upon execution of the contract with Remington Rand Inc., petitioner received an initial payment of $25,000. Although the contract did not so require petitioner paid, out of the initial payment, the balance of $9,050 due on the Cecelia M. Quinn note held by the bank, whereupon Cecelia M. Quinn transferred to petitioner the corporate note and the 10 shares of The National Perforator Co. Inc. stock both of which were owned by her. Petitioner, having been requested by the attorney to do so, also paid, out of the initial payment, the remaining balance of $3,580.30 due the attorney for defending the patent infringement suit against the corporation, the corporation being then unable to pay that balance. In addition also he paid his attorney $2,319.70 for services rendered in negotiating and drafting petitioner's contract with Remington *352 Rand Inc. The attorney considered his services in connection with the contract to have been rendered to petitioner individually. In the corporation's Federal income tax return for 1937 the payment of $9,050 on Cecelia M. Quinn's note was shown as "Payment of note by President - Donation to Company". Petitioner was president of the corporation during that year. On the original petition filed by petitioner in this proceeding it is stated that the $9,050 payment by petitioner to the bank "was made to give petitioner a clear title to the photo-copier machine". Beginning July 28, 1937 petitioner, pursuant to the contract, was employed as sales manager of the photo records division of Remington Rand Inc. This division sold machines patented by petitioner. Petitioner on his tax return for the taxable year stated that his principal occupation or profession was that of executive. His principal sources of income for 1937 were from the corporation and from Remington Rand Inc. The corporation continued in business subsequent to 1937 and is still in business. Petitioner deducted from his gross income in 1937 the amounts of $9,050 which he paid on the note of Cecelia M. Quinn held by the Second *353 National Bank of Philadelphia, $3,580.30 paid to the attorney for defending the patent infringement suit, and $2,319.70 paid to the attorney for negotiating and drafting the Remington Rand Inc. contract. Respondent disallowed the deductions. Opinion TYSON, Judge: The three issues in this proceeding all involve the question of whether certain expenditures made by petitioner in 1937 are deductible as his business expenses either within the intendment of section 23(a) of the Revenue Act of 1936 or of that section as amended retroactively by section 121 (a)(2) of the Revenue Act of 1942, which later amendment has been enacted since the hearing and the filing of briefs herein. The first issue involves the deductibility of $9,050 paid by petitioner to retire Mrs. Quinn's note. At the time of the execution of the contract between petitioner and Remington Rand Inc. by which the former granted the latter an exclusive license to manufacture and sell photo copying machines under the patent here involved, $9,050 was due the Second National Bank of Philadelphia on Mrs. Quinn's note. This note had been executed by Mrs. Quinn to take up a prior note executed in favor of the bank by the corporation *354 as principal with Mrs. Quinn's husband as endorser. The later note had, upon the execution and delivery of Mrs. Quinn's note to the bank, been transferred to her. The corporation, therefore, became indebted to her in the amount of the note which it, as principal, had failed to pay. Until this indebtedness of the corporation was paid, Remington Rand Inc. could not be assured of an unimpeachable license to operate under the patent since the corporation had an interest in, if not equitable title to, the patent. That the corporation had such an interest or title to the patent is clear as indicated by the fact that the partnership assigned to the corporation "the privilege of applying for and/or owning the patents upon any article manufactured" and the further fact that the corporation listed as one of its assets, "Application for patents $25,000" both in its minute book at the time of the original transfer or partnership assets to the corporation and in its balance sheets as shown on its income tax returns for the years 1929 through the beginning of the taxable year. The corporation being so indebted and having such an interest in the patent the contract between Remington Rand Inc. and *355 petitioner required, at the insistence of Remington Rand Inc. that petitioner pay this indebtedness, as well as the indebtedness of the corporation for the attorney fee of $3,580.30. This requirement was evidently for the purpose of protecting any interest of the corporation in the patent from possible liens or claims against it which might have resulted from suit against the corporation on the note or the claim for the attorney fees by the respective owners thereof which liens or claims might have rendered the exclusive license of Remington Rand Inc. subject to hostile attack by the holders thereof. It is therefore apparent that, under the requirement in the contract, the petitioner paid the note for the purpose of protecting the patent from any possible lien, or cloud, on his interest therein. He was thus in a position somewhat similar to a mortgagor of real estate who is required by warranty deed to the purchaser thereof, or otherwise, to pay a mortgage indebtedness thereon so as to give an unencumbered title to the purchaser of that real estate. Such an expenditure involves a capital investment and we are of the opinion that, under the facts and circumstances in the instant case, *356 the payment of the $9,050 note was likewise a capital investment and therefore in no wise an ordinary and necessary expense of petitioner within the meaning of the applicable statutes. However, regardless of whether or not the purpose above mentioned actuated this expenditure of $9,050 by petitioner in paying Mrs. Quinn's note, the end achieved by such payment resulted in the direct acquisition by the petitioner of capital assets; i.e., the 10 shares of stock (one-fifth of the total outstanding shares in the corporation) owned by Mrs. Quinn and the note of the corporation which was transferred to petitioner by Mrs. Quinn and upon which he had a right of action against the corporation, the corporation having been the principal in the obligation evidenced by that note which was taken up by Mrs. Quinn. For this reason also the expenditure of $9,050 did not constitute an ordinary and necessary business expense, but was a capital investment. See Edward J. Miller, 37 B.T.A. 830, 832. We hold that the $9,050 is not a deductible expense of petitioner. We are of the further opinion that the fee of $3,580.30 paid by petitioner to the attorney who defended *357 the suit against the corporation was an expense of the corporation and not of petitioner. The petitioner had agreed with the attorney that if the corporation did not pay the fee he would do so. The corporation being unable to pay the fee when demanded petitioner paid it and thereupon discharged a legal obligation of his and became subrogated to the right of the attorney against the corporation and consequently to reimbursement by the corporation for the amount so paid. Thus in making the payment of this attorney's fee the petitioner, in addition to discharging a legal obligation of his for the expense of another acquired as a capital asset a claim against the corporation for the amount of the fee. Petitioner has made no showing as to the uncollectibility of this claim. In fact, there is affirmative evidence that the corporation was still in business during the taxable year. The expenditure of $3,580.30 by petitioner is not an ordinary and necessary business expense of his within the meaning of the applicable statutes and we hold that he is not entitled to a deduction therefor. It is the contention of petitioner that the payments by him of the $9,050 on the Quinn note and of the $3,580.30 *358 attorney fee were made to protect and preserve his interest in the patent and to enable him to make the contract with Remington Rand Inc. and for that reason constituted ordinary and necessary expenses of his under the principle established by Edward J. Miller, supra; Robert Gaylord, Inc., 41 B.T.A. 1119; and Moloney Electric Co., 42 B.T.A. 78. The principle established by those cases does not apply here. In none of those cases were the facts at all similar to those on the instant case and in none was there involved a question for decision of whether or not expenditures made by the respective taxpayer were capital expenditures or a discharge of the taxpayer's legal obligations for the expenses of another. The third and last issue involves the deductibility of $2,319.70 paid by petitioner for legal services rendered in negotiating and drafting a contract between petitioner and Remington Rand Inc. Under the contract with Remington Rand Inc. petitioner himself undertook to grant to Remington Rand Inc. the exclusive right to manufacture, operate, sell, or rent the photo copying machine and, in *359 turn, was to receive therefore minimum royalties of $400,000. The corporation was not involved in the contract. Under these circumstances the attorney fees paid in connection with drafting and negotiating the contract were an ordinary and necessary expense for the production or collection of income and as such are deductible under section 23(a) of the Revenue Act of 1936 as amended by section 121(a)(2) of the Revenue Act of 1942. Decision will be entered under Rule 50.