UNITED STATES v. E. L. BRUCE CO., Inc.
No. 10948.

United States Court of Appeals
Sixth Circuit.
March 20, 1950.

Fred E. Youngman, Washington, D. C. (Theron L. Caudle, Ellis N. Slack, Robert N. Anderson, and Edward J. P. Zimmerman, Washington, D. C., John Brown, and Edward N. Vaden, Memphis, Tenn., on the brief), for appellant.

Lewis R. Donelson, III, Memphis, Tenn. (Lewis R. Donelson, III, Memphis, Tenn., on the brief; Snowden, Davis, Brown, McCloy & Donelson, Memphis, Tenn., of counsel) for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellee brought this action to recover federal excess profit taxes and interest in the amount of $9,669.85 for the fiscal year ending June 30, 1943, paid by it under a deficiency assessment. From a judgment in its favor the United States appeals.

The District Judge made the following findings, which, being fully supported by the evidence and not clearly erroneous, are accepted as the facts on this appeal.

The E. L. Bruce Company of Memphis, Tennessee, is the owner of the "Terminix" process for control of termites and other pests. Prior to August 17, 1942, the Terminix Company of Southern California did business in a defined area of that State as a licensee. The license contract provided that the application of terminix on bonded contracts was to be guaranteed by the Bruce Company directly to the licensee's customers for a period of five years, and further provided for the maintenance of a fund to be held in escrow by the Bruce Company, this fund to be made up from a deposit of 7% of the total amount of each bonded contract made by the licensee. This fund was to be retained by the Bruce Company to guarantee the licensee's customers any and all reinspections and retreatments in the event of the license's failure or inability to comply with the terms of its contract. Anything remaining in this fund at the end of the guaranteed period was to be returned, or otherwise credited to the licensee's account.

On May 1, 1942, the State of California revoked the contractor's license and operator's license which it had issued to the Terminix Company because of its failure to properly fulfil its contracts, and because of customer complaints. About the same time, and for similar reasons, the Bruce Company cancelled its license with the Terminix Company. The Bruce Company therefore became primarily responsible on its obligations to reinspect and retreat under the outstanding bonded contracts.

The taxpayer, E. L. Bruce Company, Inc., is a Delaware corporation operating in the State of California and is a wholly-owned subsidiary of the E. L. Bruce Company of Memphis. On August 12, 1942, the California Contractors' State License Board issued to the taxpayer a contractor's license, and on August 17, 1942, the California Structural Pest Control Board issued to the taxpayer a license to engage in the business of a structural control operator. Both licenses were issued upon the condition that the taxpayer would at its own expense make any reinspections and retreatments which became necessary under the old contracts of the Terminix Company, both bonded and unbonded.

On August 17, 1942, the taxpayer purchased the physical assets of the Terminix Company and all merchandise and supplies for a total consideration of $21,672.44, the fair market value of the same at that time. The accounts receivable, cash on hand and the good will of the Terminix Company were not included in the purchase. The purchase agreement contained the following provisions: "Seller hereby waives all of its right, title and interest in and to the

escrow fund now held by E. L. Bruce Co., a corporation, of Memphis, Tennessee, as Licensor, said escrow fund referring to monies deposited on all Bruce-guaranteed jobs in the territory of Seller, and hereby transfers, assigns and conveys to Purchaser any and all interest of Seller in said escrow fund. The Buyer shall assume and perform all bond obligations of Seller in connection with Subterranean and Drywood Contracts."

On August 17, 1942, the parent Bruce Company entered into a franchise license agreement with the taxpayer which was essentially similar to the original license contract between the parent Bruce Company and the Terminix Company. Under this contract the licensee obligated itself to promptly, and without delay, answer and attend to all calls or requests for reinspections that might be due and, where necessary, make adequate retreatment solely at the licensee's expense.

On August 17, 1942, the taxpayer commenced operations. In the course of the ensuing fiscal year, ending June 30, 1943, it incurred and paid actual expenses for reinspections and retreatments in the amount of $8,676.75, which it deducted as an ordinary business expense on its tax return for that year. On this amount $1,574.35 was expended under its own contracts, $1,253.09 was expended on unbonded and unguaranteed contracts of the Terminix Company, and $5,849.31 was expended on the bonded contracts of the Terminix Company. None of these expenses constituted payments of definite or fixed liabilities assumed from the Terminix Company. The taxpayer was obligated to make such reinspections and retreatments under both its license with the parent company and its licenses with the State of California, and for the protection of its investment and continuance in business. The provision of its contract with the Terminix Company which provided for the assumption and performance of its bonded obligations amounted to no new obligation, but was merely the affirmance of an obligation already in existence.

When the parent company terminated the license of the Terminix Company, there was on deposit in the escrow account the sum of $20,591.06. Under the terms of the license agreement the parent company was entitled to retain all of these funds and to use them in any manner it saw fit in carrying out the obligations on its outstanding guarantees. None of these funds were ever returned to the Terminix Company. At the time of the contract of sale from the Terminix Company to the taxpayer, the seller had no right in these escrow funds because of its inability to perform under its guarantees and the termination of its licenses, forfeiting the funds to the parent company. Accordingly, no right in the escrow fund passed under the contract. The parent company retained the funds and paid them to the taxpayer in annual installments. The amount of the payment made in this fashion for the year ended June 30, 1943 was $3,642.50.

The Commissioner disallowed the deduction taken for reinspection and retreatment expenses in the amount of $8,676.75 on the ground that the amounts expended in liquidating the liabilities of a predecessor which were assumed in the acquisition of the properties of the predecessor were capital expenditures and as such were not deductible. He assessed additional federal excess profit taxes for the fiscal year ending June 30, 1943 in the amount of $7,809.06 with interest, totaling $9,669.85, which amount the taxpayer paid and for which claim for refund was duly filed. The claim was rejected in full and this action followed.

The District Judge held that the three expenditures totaling $8,676.75 were ordinary and necessary business expenses of the taxpayer and were properly deductible under § 23(a) of the Internal Revenue Code, 26 U.S.C.A. § 23(a). Judgment followed for the amount prayed.

■ We are of the opinion that the $1,253.09 expended on the unbonded and unguaranteed contracts of the Terminix Company was properly classified as an ordinary and necessary expense incurred by the taxpayer in carrying on its trade or business. The District Judge found as a fact that the taxpayer made this expenditure for the protection of its investment and continuance in business. An expenditure for such a purpose clearly falls within the terms of the

statute. A. Harris & Co. v. Lucas, 5 Cir., 48 F.2d 187; Dunn & McCarthy v. Commissioner, 2 Cir., 139 F.2d 242; Scruggs-Vandervoort-Barney, Inc., 7 T.C. 779; First National Bank of Skowhegan, 35 B.T.A. 876; Edward J. Miller, 37 B.T.A. 830; Robert Gaylord, Inc., 41 B.T.A. 1119. Appellant's contention to the contrary is based upon Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, where the Supreme Court ruled that the voluntary payment by a taxpayer of unenforceable claims, under conditions there prevailing, was not an ordinary and necessary business expense. In the present case the unbonded contracts of the Terminix Company were not enforceable claims against the taxpayer. The Welch case was also relied upon by the Commissioner of Internal Revenue in the Dunn & McCarthy case, supra, where the Court analyzed and discussed it and pointed out why it was not applicable. It was also distinguished from cases like the present one by the Board of Tax Appeals in First National Bank of Skowhegan, supra, and in Edward J. Miller, supra, and by the Tax Court in Scruggs-Vandervoort-Barney, Inc., supra. We agree with the rulings in those cases. As there pointed out the expenditures which were disallowed in the Welch case were made for the purpose of acquiring good will rather than for the purpose of retaining or protecting an existing good will. In the present case the District Court's finding that the expenditure was for the protection of the taxpayer's investment is controlling.

We are also of the opinion that the $5,849.31 expended by the taxpayer on the bonded contracts of the Terminix Company was correctly classified as an ordinary and necessary business expense. In addition to the reasons applicable to the nonbonded contracts of the Terminix Company, these expenditures were required by its license agreement with the State of California and by its contract obligation with the parent Bruce Company. Louisiana Jockey Club, 13 B.T.A. 752; L. Heller & Sons, Inc., 12 T.C. 1109, June 22, 1949. The appellant contends, however, that the taxpayer assumed the liability of the Terminix Company, its predecessor in business, under these contracts as part of its contract of purchase, and that payment under such a contract constituted a part of the cost of the purchase of the assets of its predecessor, and was accordingly a capital expenditure rather than an operating expense. Magruder v. Supplee, 316 U.S. 394, 62 S.Ct. 1162, 86 L.Ed. 1555; Holdcroft Transportation Co. v. Commissioner, 8 Cir., 153 F.2d 323; W. D. Haden Co. v. Commissioner, 5 Cir., 165 F.2d 588; Athol Mfg. Co. v. Commissioner, 1 Cir., 54 F.2d 230. This well settled rule would control with respect to these expenditures if they were made by the taxpayer as a part of its contract of purchase of the assets from the Terminix Company. The District Judge found, however, that the taxpayer was obligated to make the reinspections and retreatments involved by reason of its license with the State of California, which obligation came into existence on August 12, 1942, several days before the taxpayer purchased the physical assets of the Terminix Company. In addition, a similar obligation was imposed through its license agreement with the parent Bruce Company. The subsequent insertion of such a provision in its contract with the Terminix Company was a reasonable precautionary measure on the part of the interested parties and was merely an affirmance of an obligation already in existence. Such expenses were necessary operating expenses by reason of both the taxpayer's license and franchise regardless of the subsequent cumulative provision to that effect in the contract of purchase.

■■ In line with the foregoing views, it would seem clear that the $1,574.35 expended by the taxpayer under its own contracts was also an ordinary and necessary business expense. They were operating expenses rising out of taxpayer's own contracts executed in the usual and ordinary course of its business. However, its allowance as such is disputed by the appellant on the ground that it was not properly raised in the refund claim. It is well settled that the grounds of the claim must be definitely set out in the claim for refund before suit can be maintained for the refund. Angelus Milling Co. v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619;

850

United States v. Standard Oil Co., 6 Cir., 158 F.2d 126; Cherokee Textile Mills v. Commissioner, 6 Cir., 160 F.2d 685. But failure on the part of the taxpayer to literally comply with the requirements does not automatically preclude recovery. Such formal requirements may be waived. Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253; Compare Angelus Milling Co. v. Commissioner, supra. Appellant's answer to the complaint in the District Court states—"The United States has not consented to be sued for actions of this nature and amount in the District Courts of the United States." There is real doubt that such a pleading is sufficient to raise the issue now presented to us on this appeal. But in any event, the issue, if raised by the pleading, was not followed up in the trial below, and no attempt was made by the appellee to introduce evidence on the issue of waiver. The District Judge did not rule on the issue. On this appeal the issue is not discussed in appellant's printed brief, and appellee properly refrained from discussing the issue in its answering brief. Appellant's counsel, however, urged the issue in oral argument on the appeal and later submitted, with tentative approval by the Court, a typewritten memorandum of authorities in support of the contentions. We are of the opinion that the issue, having been so treated, is not before us on this appeal. General Utilties & Operating Co. v. Helvering, 296 U.S. 200, 206–207, 56 S.Ct. 185, 80 L.Ed. 154; Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 488, 57 S.Ct. 569, 81 L.Ed. 755; Helvering v. Wood, 309 U.S. 344, 348–349, 60 S.Ct. 551, 84 L.Ed. 796. The District Judge properly allowed the deduction of this item of expense.

█ Appellant also contends that the appellee was reimbursed for its expenditures under the contract of the Terminix Company by the payments to it of the funds held in escrow by the parent Bruce Company, and having been so reimbursed it could not deduct those expenditures as expenses. The District Judge found that because of the inability of the Terminix Company to perform its guarantees, the parent Bruce Company acquired the funds in escrow for use in any manner it saw fit in taking care of the outstanding guarantees, and that none of the funds were ever returned to the Terminix Company. Accordingly, the taxpayer received the money from the parent company rather than from the Terminix Company. The parent company had previously advanced $40,000 to the taxpayer to purchase the assets of the Terminix Company and to start operations. It was interested in its continued successful operation which required operating capital. The payments from the escrow fund were made to the taxpayer in annual installments and in amounts which bore no relation to expenses incurred. The District Judge held that the payments constituted a capital contribution by the parent Bruce Company as the sole stockholder of the taxpayer, rather than payments of income for reimbursement of expenses. We agree with the ruling. Mertens Law of Federal Income Taxation, Section 5.13; Cambridge Apartment Building Corporation, 44 B.T.A. 617. See also Edwards v. Cuba R. Co., 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124.

The judgment is affirmed.