CONSOLIDATED FREIGHT LINES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88246. Promulgated March 29, 1938.

*Robert R. Rankin*, Esq., for the petitioner.
*John H. Pigg*, Esq., for the respondent.

## OPINION.

ARUNDELL: In its income tax return for 1934 the petitioner claimed losses on account of the worthlessness of the franchises acquired under the above certificates in the following amounts:

| | |
|---|---|
| Yakima-Prosser | $15, 025. 00 |
| Yakima-Easton | 5, 000. 00 |
| Spokane-Ephrata-Wenatchee | 36, 388. 98 |
| Spokane-Yakima | 1, 000. 00 |
| Seattle-Wenatchee | 20, 025. 00 |

By amended pleadings in this proceeding the petitioner claims the loss on the Spokane-Ephrata-Wenatchee certificate should be increased by $7,000 to $43,388.98. By the same pleading petitioner concedes the correctness of the Commissioner's disallowance of the loss of $4,500 claimed on the return for a certificate covering an interstate route from Yakima, Washington, to Portland, Oregon.

The question for decision here is whether or not the petitioner suffered a deductible loss by reason of legislation which was enacted by the State of Washington in 1933 and took effect January 17, 1934. The successive legislative acts of the State of Washington referred to by the parties may be briefly described. It appears that regulation of motor carriers began with an enactment in 1921. Laws of 1921, ch. 111. That act gave the Department of Public Works (subsequently, the Department of Public Service) authority to regulate motor carriers operating "for the transportation of persons and, or, property for compensation between fixed termini or over a regular route in this state * * *." The regulation was to be accomplished through the medium of granting or withholding certificates of "public convenience and necessity." The statute contained a mandatory provision, commonly called the "grandfather clause", requiring issuance of such certificates to carriers operating on January 15, 1921. Certificates for competitive lines could be issued, after hearing, only when the existing line failed to provide satisfactory service. By statutory provision, certificates could be "sold, assigned, leased, transferred or inherited as other property, only upon authorization of the Commission." Sec. 4, ch. 111, Laws of 1921.

The purpose of section 4 of the 1921 statute is described in *Buck* v. *Kuykendall*, 267 U. S. 307, 315, as follows:

* * * Its primary purpose is not regulation with a view to safety or to conservation of the highways, but the prohibition of competition. It determines not the manner of use, but the persons by whom the highways may be used. It prohibits such use to some persons while permitting it to others for the same purpose and in the same manner. * * *

The effect of the 1921 statute was to grant monopolies to those carriers in operation on January 15, 1921, and the first comers thereafter in other territory, and to perpetuate the monopolies in successors who acquired the certificates of public convenience and necessity by purchase or otherwise. Thus the certificates, by reason of granting the right of operation to their holders to the exclusion of others, came to have considerable value. The certificates acquired by the petitioner, as described in the findings of fact, were certificates issued under the 1921 statute.

The 1921 statute limited regulation to motor carriers operating "between fixed termini or over a regular route." Statutes enacted in 1933 (ch. 166, Session Laws of 1933) extended the regulatory power of the Department of Public Service to other classes of motor carriers, designated "contract haulers", "for hire carriers", and "private carriers." These classes of carriers were required to procure permits from the Department of Public Service in order to engage in motor transportation. This legislation did not affect the certificates of convenience and necessity issued under the 1921 statute.

Chapter 55 of the Extraordinary Session Laws of 1933, which became effective January 17, 1934, and are herein for convenience called the 1934 statute, elaborated the provisions of the earlier statute of the year 1933. The particular provision added by the Extraordinary Session Laws which is of interest here is as follows:

Nothing herein contained shall be construed to confer upon any person the exclusive right or privilege of transporting property for compensation over the public highways of the State of Washington.

The 1934 statute, like the old, required carriers like the petitioner to procure certificates of public convenience and necessity which, as under the 1921 statute, could be "assigned, sold, leased, transferred or inherited as other property only upon authorization of the department." The 1934 statute did not, like the 1921 statute, limit the power of the department to authorize competing lines only in case of inadequacy of service, but could, after hearing, issue or refuse in whole or in part, certificates authorizing competing service in the same territory. Section 18 of the 1934 statute provided that operators under certificates issued under the 1921 statute "shall continue to operate under said certificates in the same manner and to the same effect as if such certificates were granted under the provisions of this act." The substance of the changes wrought by the 1934 statute is succinctly stated in *State* v. *Valley Milk Transp. Inc.*, 183 Wash. 329; 48 Pac. (2d) 208, 209, where the court said that the changes established "the principle of regulated competition   *   *   *."

With this resume of the successive statutes before us, we face the question of whether the statutory changes that became effective in 1934 so affected petitioner's certificates of public convenience and necessity as to result in a deductible loss. Petitioner's view is that under its certificates issued under the 1921 statute it had monopolistic rights which were destroyed by the 1934 statute; that such rights had been acquired at substantial cost and had considerable value; and that the destruction of them resulted in a deductible loss.

A comparison of the statutes and the description of them in the court cases cited above leaves no doubt that the 1921 statute granted monopolistic rights and that the 1934 statute destroyed the monopolistic character of those rights. It does not follow, however, that a deductible loss was sustained. When the petitioner acquired the certificates such certificates were a prerequisite to the conduct of the business of transporting property over state highways between fixed termini or over a regular route. They were obviously acquired by the petitioner for the purpose of engaging in that business, as it thereafter did operate such a business. The monopolistic character of the certificates is not, as far as the record shows, a thing separate and apart from the right to carry on a business under them. In other words, there is no showing that the certificates were bought and sold like

shares of stock or bonds which are so often held by the owner for income or appreciation without thought of his engaging in the business that gives value to the securities. Such monopolistic features as the certificates had were, in fact, effective only if the holder engaged in the business to which the certificate related. If he did not conduct the business authorized and did not do it in such a way as to furnish service satisfactory to the issuing department, certificates could be issued to others to serve the same territory and thus destroy the petitioner's monopoly. Thus, the monopoly granted by the certificates can not be viewed as a thing separate and distinct from the other rights granted and duties imposed by them. The monopoly was only one element that gave them value.

The complete enmeshing of the monopolistic and operating aspects of the certificates distinguishes this case from those in which the right to operate a business is lost or destroyed. Petitioner cites *O. R. Fuller*, 11 B. T. A. 1025, as authority for its claim. In that case the taxpayer paid some $10,000 to an operator of bus lines in California for what he thought were rights to operate over certain highways in California. In 1921 the California Railroad Commission decided that the vendor had no operative rights over the particular highways. The result of this was, as we found, that the taxpayer "had paid a purchase price for certain operative rights, but had acquired nothing." We allowed a loss deduction. That decision does not support the petitioner's case. There, upon conclusion of the proceedings before the local regulatory body, the taxpayer had no operative rights—his business was completely obliterated. Here, the petitioner's operative rights and its business carried on in virtue of its certificates continue, they have neither been lost nor in any way hampered. On like ground there must be distinguished the cases allowing obsolescence and loss deductions where businesses were affected by prohibition legislation. See *V. Loewers Gambrinus Brewery Co.* v. *Anderson*, 282 U. S. 638; *William Zakon*, 7 B. T. A. 687; *McAvoy Co.*, 10 B. T. A. 1017; *Elston Co.* v. *United States*, 21 Fed. Supp. 267 (Ct. Cls., Dec. 6, 1937). The last three cited cases involved deductions for liquor or saloon licenses, and the facts, particularly in the *Elston* case, concerning the acquisition and holding of licenses are quite close to the facts here. In the *Elston* case the taxpayer had purchased a number of saloon licenses which, because of an ordinance limiting the number thereof on the basis of population but containing a grandfather clause, were valuable and were bought and sold and for some purposes were treated as property. With the advent of prohibition legislation in 1919 the licenses became worthless and were abandoned by the taxpayer in that year. The Court of Claims allowed a deduction in the amount of the cost to the taxpayer

of its licenses. The court, citing the above mentioned Board cases, said:

   \* \* \* The renewal rights of saloon licenses in those cases, as in the instant case, were income producing assets, subject to purchase, sale and assignment, separate from the business itself. They were assignable assets distinct from the business. In this respect they were in the same category with patents, contracts and franchises. \* \* \*

At first glance this language would seem to support the petitioner's position here. However, it must be borne in mind that the court was speaking in the light of the factual situation of the destruction of the business to which the licenses related. When so considered it can not be said that the *Elston* case, or the others cited, stand for the allowance of deductions in respect of licenses where the business goes on despite a change in some feature or characteristic of the license.

Assuming in the present case that the monopolistic features of the certificates issued under the 1921 statute had some value apart from the operative rights, and that the monopolistic features were destroyed by the 1934 legislation, the petitioner has not shown what part of cost is attributable separately to those features. Hence it has not established its basis for gain or loss.

We find no error in the respondent's determination.

*Decision will be entered for the respondent.*