**CHASE CANDY COMPANY,**
a Corporation,

v.

**The UNITED STATES.**

No. 350–52.

United States Court of Claims.

Nov. 30, 1954.

George C. Willson, III, St. Louis, Mo., Willson, Cunningham & McLellan, St. Louis, Mo., for plaintiff.

Philip R. Miller, Washington, D. C., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the briefs, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

Plaintiff sues to recover $368,989.88 corporate income taxes alleged to have been overpaid for the fiscal year ending June 30, 1947.

Defendant has moved for summary judgment under Rule 51 on the ground that the pleadings raise no genuine issue as to any material fact and that defendant is accordingly entitled to judgment as a matter of law.

In its amended petition plaintiff has alleged in substance the following facts. On December 20, 1946, plaintiff purchased for an amount in excess of $4,-250,000, a candy manufacturing business.[1] In acquiring the business, plaintiff alleged that it also acquired the seller's rights to purchase and use, in the manufacture of candy, certain amounts of sugar and chocolate as determined pursuant to Government sugar rationing regulations and manufacturer's voluntary chocolate rationing regulations, which regulations were due to expire on March 31, 1947. Plaintiff also alleged that it thereafter exercised such rights acquired from the seller in the purchase

1. The business purchased was known as the National Candy Company Division of Clinton Industries, Inc.

of huge amounts of Government rationed sugar and industry rationed chocolate.

Plaintiff further alleged that due to the shortage of sugar and chocolate and the great demand for candy during the rationing period, the rights to purchase sugar and chocolate which it had acquired in the purchase of the seller's candy manufacturing business, were of great value as long as sugar rationing continued. It is alleged that in the contract of sale the sum of $971,026 was allocated to the acquisition of intangible assets, including good will, patents, trade-marks, trade names, etc. Although no specific amount was mentioned in the contract under which it purchased the National Candy Company, as having been paid for the seller's rights to purchase sugar and chocolate, plaintiff alleged that the entire sum allocated to "intangible assets" represented the cost of these purchase rights and that the intangible assets expressly mentioned in the contract were of only nominal value.

When sugar rationing (and consequently chocolate rationing) was discontinued on July 28, 1947, the rights to purchase *rationed* sugar and chocolate acquired from the seller, became completely worthless.

In its Federal income tax return for the fiscal year 1947 plaintiff did not deduct the $971,026, or any portion thereof, which it says was the cost of the sugar purchase rights. It later filed a timely claim for refund which the Commissioner of Internal Revenue denied.

Plaintiff contends, in its briefs on the facts above set forth, that it has sustained a loss in the amount of $971,026 which is deductible from its 1947 taxable income within the intent and meaning of the Internal Revenue statutes, either (1) as a business expense;[2] (2) as a loss upon property becoming worthless or abandoned;[3] or (3) as a depreciation allowance.[4]

Plaintiff urges that if any of its contentions are sustained, it has overpaid its taxes to the extent of $368,989.88.

On the facts, this appears to be a case of first impression. Both parties have submitted briefs and arguments in support of their respective positions. The basic question presented involves the determination of the precise nature, for tax purposes, of plaintiff's expenditure of $971,026, assuming, as plaintiff alleges, that the whole of that sum is properly allocable to what plaintiff chooses to term the seller's "right to purchase rationed sugar" or the seller's two "rationed commodity bases" (sugar and chocolate).

At the time of the sale of the business of the National Candy Company Division, applicable sugar rationing regulations[5] provided that an industrial user of sugar was entitled to an allotment for each use or product for which he had established a "base period use" measured as a percentage of the base period use. An industrial user of sugar established[6] his base, i. e., period use, by reporting the total poundage of sugar used during each of the four quarters of 1941 for each class of products, including chocolate. An industrial user of sugar who had established a base period use and had received an allotment was prohibited from transferring that allotment as such.[7] However, if the business establishment of the industrial user of sugar was sold in whole or in part, the buyer could acquire an allotment of sugar equal to that of the seller if he could satisfy the Office of Price Administration (1) that the sale of the business was bona fide, (2) that he, as transferee or buyer, would continue to serve the same class of customers in the same area, and (3)

2. Section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1).

3. Section 23(f).

4. Section 23(*l*) (1).

5. Third Revised Ration Order 3, effective January 1, 1946, 11 Fed.Register 134, Sec. 2.2.

6. Third Revised Ration Order 3, Sec. 2.1 (e).

7. Third Revised Ration Order 3, Sec. 18.3.

that he would continue to produce at the purchased establishment the same class of products.

The buyer acquired from the Government the new sugar allotment, not by a conveyance or purchase of that sugar allotment to him by the seller, but by virtue of the action of the Office of Price Administration. The seller's sugar allotment was cancelled by OPA immediately upon receipt of the required notice by OPA of the sale, at which time the seller also had to surrender to OPA all its unused sugar ration evidences. Until the buyer received a new sugar allotment, it could not use any of the sugar actually on hand or transferred with the purchased establishment or business.

The controls on prices and uses of commodities by OPA during the war period had the effect of preventing uncontrolled price increases and quick exhaustion of vitally necessary commodities. By limiting the use of sugar to those industrial users who had been in business during 1941, however, a monopoly was created in favor of those industrial users and the usual disastrous effects on consumers of a seller's market were thus avoided by price control. The rate provisions of the tax laws siphoned off some of the huge and abnormal war profits made by those who enjoyed the monopoly thus conferred on industrial users of sugar. A situation not specifically dealt with by wartime legislation appears to be the one presented to the court by the facts in this case.

In acquiring all the assets of the National Candy Company plaintiff did not and could not legally acquire from National the sugar allocation which the United States had theretofore made to the National Candy Division. As a result of the purchase of the business, plaintiff bacame entitled to apply to the Government for an increased sugar allocation because of its acquisition of the business of National, i. e., an "industrial user establishment" which was registered with OPA. The mere purchase of this manufacturing establishment, however, did not automatically entitle plaintiff to have assigned to it the purchased establishment's sugar allocation. Plaintiff had to satisfy OPA that it would continue the seller's business establishment, serve the same customers in the same area, and produce the same class of products.

It is undoubtedly true that because of scarcity produced by the war, and regulations made pursuant to law for the public interest and welfare, a candy business establishment with a substantial sugar allocation had a higher market value during the period when sugar rationing was in effect than it had before or after, and that this enhancement in value disappeared upon the removal of rationing controls. For this reason plaintiff paid, as it alleges, more for National's candy manufacturing business in December of 1946, when sugar rationing was in effect, than it would have had to pay had sugar rationing not been in effect or after sugar rationing had been abandoned and the market was competitive rather than monopolistic. But this does not prove that under the tax laws plaintiff acquired from National Candy Company that kind of an asset on which it could take a deduction for exhaustion or as a loss when sugar rationing was removed.

In a sense, plaintiff paid a premium in order to enjoy the benefits of a ready-made market created and maintained by the Government, not for the purpose of increasing plaintiff's earnings, but rather in the public interest and in the interest of the national economy in time of war. Once that interest was served, the Government removed all controls and plaintiff and other industrial users of rationed sugar found themselves with plenty of sugar and no monopoly.

Assuming for the purposes of this motion that the parties negotiated with respect to the price plaintiff would pay for the opportunity to secure from the Government the right to purchase and use more sugar in the expansion of its candy business, did the expenditure of the amount agreed upon by the parties

represent an ordinary and necessary expense to plaintiff of doing business, and, as such, deductible for tax purposes in the year expended? Or, did plaintiff expend the amount in question to acquire an intangible asset having a known useful life of less than a year which, for tax purposes, could be amortized over its known useful life and taken as a depreciation deduction for its full amount? Or, did plaintiff acquire an intangible asset, the cost of which could be written off as a loss deduction from income, when it suddenly found itself without the monopoly which it had enjoyed when the Government ended sugar rationing?

Plaintiff argues first that the expenditure represented an ordinary and necessary business expense because the two commodity bases acquired from the seller served only to permit plaintiff to procure sugar and chocolate to be used by plaintiff in the manufacture of candy and their cost was therefore a part of the cost of the rationed sugar which plaintiff was permitted to buy and a part of the cost of the candy it manufactured. Plaintiff relies primarily on the Tax Court's decision in Western Wine & Liquor Co., 18 T.C. 1090. In that case the taxpayer was in the wholesale liquor business. At the time in question, whiskey production had been curtailed and restricted by Government order. The supply situation was extremely tight and the demand was equally strong. Allotment was by the suppliers, not by the Government. The taxpayer needed to obtain more whiskey than it was allotted by its suppliers in order to keep its business going. In order to secure more whiskey, the taxpayer purchased a number of shares of stock in the American Distilling Company. These shares carried certain whiskey purchase privileges or rights entitling the holders to purchase their proportionate shares of American's bulk whiskey inventory at cost. The taxpayer exercised these rights to purchase bulk whiskey and then sold the stock at a price less than it had paid for the shares. The Tax Court held that the loss sustained by the taxpayer on the sale of the shares of American Distilling Company represented the additional cost of the whiskey purchased by the taxpayer in exercising the whiskey purchase rights incident to the shares. The court reached this result by finding that the taxpayer purchased the stock not as an investment in stock, but only to acquire more whiskey to replenish its inventories in order to sustain its business; that immediately upon acquiring the whiskey, taxpayer sold the stock.

We think that the Western Wine & Liquor Co. case is distinguishable on its facts. In that case the taxpayer expended money to protect its existing business or good will. Canton Cotton Mills v. United States, 94 F.Supp. 561, 119 Ct.Cl. 24. In the instant case the expenditure in question was for the purpose of acquiring new business, and, as such, is more analogous to a capital outlay than to an ordinary and necessary business expense. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. Accordingly, plaintiff is not entitled to deduct the amount in question as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code.

Next plaintiff contends that those candy manufacturers who were operating in 1941 acquired very valuable rights by virtue of Rationing Order No. 3, issued pursuant to the Second War Powers Act of March 27, 1942, 56 Stat. 176. Plaintiff urges that by the purchase of a National Candy Company Division of Clinton Industries, Inc., it acquired the rights of that company to purchase and use rationed sugar and chocolate; that the rights had definite and distinguishing attributes which take them out of the category of mere incidents of value attached to a going concern, such as good will, and that they can be separately valued for tax purposes. Plaintiff then says that the proper allocation of

the lump sum purchase price among the assets acquired presents a question of fact which requires a trial on the merits.

In Weiss v. Wiener, 279 U.S. 333, at page 335, 49 S.Ct. 337, 73 L.Ed. 720, the court made the following comment:

"The income tax laws do not profess to embody perfect economic theory. They ignore some things that either a theorist or a business man would take into account in determining the pecuniary condition of the taxpayer. They do not charge for appreciation of property or allow a loss from a fall in market value unless realized in money by a sale. United States v. S. S. White Dental [Mfg.] Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120. A stockholder does not pay for accumulated profits of his corporation unless he receives a dividend."

Plaintiff suggests it would be *economically* unsound to hold that it suffered no loss by the termination of sugar rationing. But we think that under the facts and circumstances of this case it would be legally unsound to hold that the tax laws permit a deduction from gross income as an ordinary and necessary expense, or as exhaustion, or as a loss for the particular type of loss suffered by plaintiff.

When the taxpayer purchased National's candy business it did not automatically acquire National's sugar allocation. By virtue of its acquisition of that new business plaintiff was entitled to apply for a sugar allocation equal to that previously enjoyed by National. When plaintiff, to the satisfaction of O PA, met the requirements of the rationing regulations, it was assigned such an allocation. The acquisition of a business which had been in operation in 1941 provided plaintiff with the means by which it could take advantage of a monopoly. The monopoly, however, was conferred on plaintiff and other candy manufacturers, by statute. As stated by the court in Consolidated Freight Lines v. Commissioner, 9 Cir., 101 F.

2d 813, 814, certiorari denied 308 U.S. 562, 60 S.Ct. 73, 84 L.Ed. 472—

"Whatever right the statute conferred on petitioner was subject to the right of the state to change it."

In that case a motor carrier had acquired certain certificates of public convenience and necessity from other operators at costs far in excess of their original cost to the sellers. At the time of acquisition, the law of the State of Washington had the effect of granting monopolies to those carriers in operation in 1921. In 1934, a new law repealed the monopolistic characteristics which had existed under the 1921 law. The taxpayer claimed that the destruction of the monopolistic rights by the 1934 act had also destroyed the value of the certificates issued under the 1921 act, and that the taxpayer had therefore sustained a deductible loss in the amount of the cost of the certificates to it. In denying the taxpayer's claim, the Board of Tax Appeals, 37 B.T.A. 576, held that, assuming the monopolistic features of the certificates issued under the 1921 act had some value apart from the operative rights conferred by them, the petitioner had not shown what part of the cost of the certificates was attributable separately to such monopolistic features and hence had not established a basis for gain or loss. The Circuit Court of Appeals (Ninth Circuit) affirmed the decision of the Board disallowing the deduction, but for an entirely different reason. The court held that the monopoly was not granted by the certificates but rather by the 1921 statute; that the certificates merely provided the means by which a carrier might take advantage of the monopoly conferred by statute. The court held that the taxpayer suffered no deductible loss on the certificates because the thing destroyed, i. e., the monopoly, was not a part of the certificates.

In its attempt to distinguish the Consolidated Freight Lines case, the plaintiff has referred to the reasoning advanced by the Board of Tax Appeals.

As pointed out above, that reasoning was not adopted by the Court of Appeals.

We think plaintiff's situation is similar to that of the taxpayer in Consolidated Freight Lines, supra, as that situation was analyzed by the Circuit Court, in that the assets purchased by plaintiff from National did not include the thing which was destroyed, and which was of value for a time to plaintiff, i. e., the monopoly. Accordingly, even assuming that plaintiff paid a fixed amount for National's base period or purchase rights, in order to acquire its manufacturing business, it is not entitled to a deduction in that amount as the depreciation in value of an intangible asset under Section 23 (*l*) (1) of the Internal Revenue Code and Section 29.23 (*l*)–3 of Treasury Regulations 111, nor as a loss due to the abandonment of property or loss of useful value under Section 23 (f) of the Internal Revenue Code and Section 29.23(e)–3 of the Regulations.

Defendant's motion for summary judgment is granted and the petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, Judge, concur.

MADDEN, Judge, (dissenting).

The plaintiff contends that $971,026 of the $4,250,000 which it paid for the candy business which it purchased, was paid for the right to step into the shoes of the seller, and thus get the privilege of obtaining sugar in a rationed market. It says that, since it was contemplated at the time of the purchase that rationing would continue only for some months, it was, in effect, paying that much more than the over-the-counter price of the sugar for the sugar that it would use during those months.

That contention seems to me to be founded upon a realistic view of the transaction. I would, therefore, let the case go to trial and give the plaintiff the opportunity to prove, if it could, its allegations.

The Tax Court case, Western Wine & Liquor Co., discussed in the opinion of the court, seems to me to be in point. There, in order to buy the whiskey which it wanted, the taxpayer had to buy shares of stock in a distillery, which it did not otherwise want. The Tax Court held that the taxpayer's loss on the shares represented a part of the cost of the whiskey. Here the taxpayer, in order to buy the sugar which it wanted, had to pay $971,026 more than the candy business which it purchased was otherwise worth to it. To be sure, the seller could not sell to it the privilege of buying rationed sugar. It had to acquire that privilege from the OPA. But, under the statutes, and the regulations of the OPA, it could not have gotten the privilege except by buying the going business, and it could get the privilege if it bought the going business. In reality, when the plaintiff decided to buy the business at the allegedly expanded price, it had decided that it could afford to expand, for sugar, during the remaining months of rationing, the price per pound which the seller of the sugar would charge it, plus $971,026.

The case of Consolidated Freight Lines v. Commissioner, discussed in the opinion of the court, does not seem to me to have been rightly decided by the Circuit Court of Appeals. If, in fact, one has paid for a license or franchise, whether he has paid for it to a city or state, or to an owner of a business to which the right is appurtenant because of some "grandfather" provision in the applicable laws, he is out the money, and if, by reason of a change in the laws, he loses the monopoly granted by the license or franchise, I see no reason why his true status should not be recognized by the tax authorities.

WHITAKER, Judge, joins in the foregoing dissenting opinion.