The VAN IDERSTINE COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 11, Docket 25031.

United States Court of Appeals Second Circuit.

Argued Oct. 22, 1958.

Decided Nov. 28, 1958.

Ivar N. Nelson, Chicago, Ill., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, and Carolyn R. Just, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before SWAN and MOORE, Circuit Judges, and KAUFMAN, District Judge.

SWAN, Circuit Judge.

This appeal presents a single point of narrow compass, namely, whether payments by the taxpayer in the amount of $25,000, in the year 1950 are deductible as ordinary and necessary expenses of carrying on its business. Sec. 23(a) (1) (A) of Internal Revenue Code of 1939 as amended, 26 U.S.C.A. § 23(a) (1) (A).

There is no dispute as to the facts. The taxpayer files its tax returns on an accrual and calendar year basis. It is engaged in the business of rendering raw materials, consisting of inedible animal fats, offal and bones which it collects from butcher shops, restaurants, chain stores, hotels and slaughter houses, and of selling the resulting products. The obtaining of raw materials in a large and steady volume is an essential part of the taxpayer's business. To insure this the taxpayer at times made various individual lump sum payments to the suppliers. Payments made to Food Fair Stores in 1950 aggregated $25,000. With respect to these payments the Tax Court found as follows:

"The payments made to Food Fair Stores, as set forth above, were made at the rate of $2,500 per store, in consideration for agreements giving petitioner the right for an indeterminate period to purchase all such raw materials as Food Fair Stores might have, at their stores, at such prices as would from time to time be agreed upon by petitioner and Food Fair Stores. There was no understanding or agreement between petitioner and Food Fair Stores as to the period of time during which petitioner would be permitted to purchase and collect raw materials from Food Fair Stores and such agreements were subject to being discontinued at any time by either party. Similar agreements had been made with Food Fair at varying amounts per store since 1939 with reference to upwards of 50 of its stores. These agreements were still in effect at the time of the trial of this case."

The Tax Court held that the "rights under these contracts" had an economic value extending beyond the year 1950, and "The right thus acquired is an intangible capital asset and the amounts paid therefor are in the nature of capital expenditures rather than ordinary and necessary business expenses."

We disagree. The error in this conclusion arises from the assumption that taxpayer's payments gave it the "right" for an indeterminate period to purchase such raw materials as Food Fair Stores might have for sale. In our opinion the findings do not support the conclusion that the taxpayer acquired such "right." In return for the $2,500. paid to Food Fair, when it opened a new store in the territory where the taxpayer was accustomed to collect raw materials, Food Fair promised nothing except to sell to the taxpayer at prices which they might thereafter agree upon. The Tax Court made no finding that Food Fair promised to sell to the taxpayer at the prevailing market price or at the price Food Fair might be willing to accept from anyone else. There was no agreement as to the period of time during which the taxpayer would be permitted to purchase, and "such agreements were subject to being discontinued by either party at any time." Not even notice was necessary to terminate the "agreement." Mr. Hausserman, President of the taxpayer, testified that "They [Food Fair] could have discontinued the arrangement the next day," or "we could have." So far as we can see, Food Fair made no promise, express or by implication, which bound it to do, or refrain from doing, anything. Food Fair might refuse the price offered by the taxpayer for any reason it chose. It was privileged to sell to a competitor of the taxpayer even though the competitor's price was less than the taxpayer offered. Nor was Food Fair obligated to give the taxpayer the first refusal of any price it was willing to accept from another. Under familiar principles of the law of contracts, no enforceable contract was created by such an "arrangement." In Willard, Sutherland & Co. v. United States, 262 U.S. 489, 492, 43 S.Ct. 592, 67 L.Ed. 1086, it was held that a contract for

the purchase of coal by the government at a stated price per ton which does not require the government to take, or to limit its demand to, any ascertainable quantity, is unenforceable for lack of consideration.[1] We think the situation at bar, except for the amount involved and the fact that the payment was made by a prospective purchaser instead of a seller, is like that of a seller who incurs the expense of buying a dinner for a prospective customer in the expectation or hope of securing his trade. All that the taxpayer acquired by its payments to Food Fair was an expectation or hope that it would be preferred over other possible purchasers. In our opinion a payment made because of such an expectation or hope cannot be considered as the purchase of an "intangible capital asset." If the $2,500. payment was a "capital expenditure," it should have resulted in the acquisition of "capital," i. e. an addition to the payor's taxable wealth. That did not happen in this case.

Nor can it be successfully argued that the taxpayer purchased "goodwill," a subject matter which can be measured in money and is frequently bought and sold. The "goodwill" that is the subject of purchase and sale always involves the relations of the seller with third persons, relations that exist prior to the purchase and sale. They are the relations based upon and created by the antecedent business transactions between the seller and these third persons. Such relations have no existence apart from the feelings, habits and desires of these third parties. In the case at bar there was no such "goodwill," no antecedent relations of the receiver of the payment with previous customers who will probably transfer their patronage to the payor. There is no return for the payor's money other than the resulting feelings and state of mind of the receiver itself. They are created solely and exclusively by the payment. Such feelings, so far as the law of contracts or property is concerned, cannot be regarded as a capital asset. Since no "right" was acquired the payment must be either a gift or an expenditure to promote the payor's business. Plainly it was not intended as a gift. It was a payment made to protect and promote the taxpayer's business. Such payments have been held to be deductible business expenses.[2]

The cases cited by the Tax Court in support of its decision are distinguishable. Hickok Oil Corp. v. Commissioner, 6 Cir., 120 F.2d 133, involved the valuation of a contract for the sale of all gasoline required by Hickok for a definite term and at a definite price. Chase Candy Co. v. United States, 126 F.Supp. 521, 130 Ct.Cl. 102, involved the purchase of assets to which goodwill was attached. Here there was no purchase of goodwill. Nachman v. Commissioner, 5 Cir., 191 F. 2d 934 is also distinguishable. It involved the purchase of an existing liquor license for which the purchaser paid a premium because of the renewal privilege incident to the license. By the premium payment the purchaser acquired an intangible capital asset which he could retain or sell again. The decision held that it was a non-depreciable capital asset. The question of depreciation of the ten payments to *Food Fair Stores* is not involved in the case at bar.

The decision is reversed and the cause remanded for recomputation of the tax.

---

1. See Corbin on Contracts § 152 and cases cited, at page 500 et seq.; A. L. I. Restatement of Contracts § 32(a). Illustration No. 10.

2. Harris & Co. v. Lucas, 5 Cir., 48 F.2d 187; First Nat. Bank of Skowhegan, Maine, 35 B.T.A. 876; Edward J. Miller & Co., 37 B.T.A. 830; L. Heller & Son v. Commissioner, 12 T.C. 1109.