ESTATE OF ROBERT WOOD, DECEASED, CONSTANCE WOOD, SURVIVING SPOUSE, AND CONSTANCE WOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Wood v. Commissioner
Docket No. 16170-83.
United States Tax Court
T.C. Memo 1985-517; 1985 Tax Ct. Memo LEXIS 118; 50 T.C.M. (CCH) 1232; T.C.M. (RIA) 85517; September 30, 1985. Gino P. Cecchi, for the petitioners. James S. Daubney, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined *119 a deficiency of income tax against Robert Wood and Constance Wood for the year 1979 in the amount of $7,022.31. After concessions, the sole issue which we must determine is whether Robert Wood suffered a deductible casualty loss in 1979 on account of the alleged worthlessness, in that year, of an asset used in Robert Wood's trade or business. Robert and Constance Wood, husband and wife, filed a joint income tax return for the calendar year 1979 with respondent at Fresno, California. Robert Wood (hereinafter "decedent") died on January 26, 1983, and his estate and Constance Wood are the petitioners herein, with residence in San Francisco, California. In 1959, decedent applied to the San Francisco Police Commissioner, under then-existing ordinances and regulations of the City and County of San Francisco, for a transfer to him of a "certificate of public convenience and necessity," which he had purchased from a third party, and which would entitle him to operate a taxi for hire in that jurisdiction. Permission was granted, and an appropriate taxicab permit was issued to decedent, authorizing him to operate one vehicle as a taxicab for hire within the jurisdiction of the San Francisco *120 Police Department. Unless revoked for cause, this permit was automatically renewable from year to year. Under ordinances and police regulations in effect at that time, the issuance and transfer of taxicab permits in the City and County of San Francisco was regulated by the Police Commission. Subject to approval by the Commission, the transfer of a taxicab permit from one person or firm to another was permitted, and holders of a taxicab permit were also permitted to lease out the use of their permit to another. Decedent had a cost basis in the taxicab permit so procured of $16,265. Decedent owned this permit from the time he acquired it in 1959 until his death in 1983. Beginning in 1978, however, he leased the operation of the taxicab under his permit to others, and reported income therefrom in his income tax returns for the years and in the amounts as follows: [1]
Year
Income From Permit Lease
1978
$4,700
1979
4,700
1980
6,125
1981
9,100
1982
10,250
1983
26,050
*121 On June 6, 1978, the voters of San Francisco voted upon and adopted Proposition K. So far as relevant herein, the adoption of Proposition K changed the system with respect to taxicab permits, in that such permits, once issued, were thereafter not to be sold, assigned or transferred. Holders of existing permits were given a period of 60 days after the effective date of the new ordinance within which to exchange their existing permits for new permits, and the old permits then outstanding would become void. Taxicab permits were declared to be the property of the people of the City and County of San Francisco. Thereafter, the permit of a holder who died, who failed to use his permit within a given period of time, or who had his permit otherwise revoked for cause had to be surrendered to the Police Commission. No change, however, was made to existing law, whereunder a permit could continue to be used indefinitely by the holder thereof, or leased to other persons. Although the record does not disclose the effective date of Proposition K, certain taxicab operators in San Francisco, after the election, sought to block the new ordinance going to effect by seeking an injunction in the *122 California Superior Court against enforcement of Proposition K. An appeal from the denial of such an injunction by the Superior Court wad denied by the California Court of Appeals on March 6, 1979. At least by that date, therefore, Proposition K was in full force and effect. In their joint income tax return for 1979, decedent and petitioner Constance Wood claimed the amount of $16,500 as a loss from "casualty or theft" with respect to an asset used in the trade or business, viz the taxicab permit. Respondent denied the claimed deduction, determining that no deductible loss had occurred. The parties apparently recognize that the issue before us is controlled by the provisions of section 165. [2] The parties, however, appear somewhat ambivalent as to the proper classification of the alleged loss, each side at various times arguing that the events here should be measured by the standards of section 165(c)(1) and, at other times, addressing the matter as covered by section 165(c)(3). In our view, there should be no ambiguity here: the result of the action of the voters, in curtailing decedent's rights in his taxicab permit by the enactment of Proposition K, is to be measured under *123 the standards of section 165(c)(1). The action of the voters clearly did not cause a casualty to or a theft from decedent with respect to any property, as those terms are defined in section 165(c)(3). See Durden v. Commissioner,3 T.C. 1, 3 (1944); Matheson v. Commissioner,54 F.2d 537, 539 (2d Cir. 1931), affg. 18 B.T.A. 674 (1930). Petitioners claim that the enactment of Proposition K, restricting decedent's right to assign, sell or transfer his taxicab permit, rendered that valuable asset used in his trade or business worthless, and that he was therefore entitled to a casualty loss deduction for 1979 in the amount of his cost basis. We think the law is clear that a loss, in order to be deductible, must be evidenced by a closed and completed transaction. United States v. White Dental Co.,274 U.S. 398 (1927); section 1.165-1(b), Income Tax Regs. For purposes of the closed and completed transaction *124 rule, the various rights which decedent had in his taxicab license cannot be separated into separate pieces of property so that the elimination of one of those rights can constitute a closed and completed transaction within the meaning of the statute. The facts in this case show that after the adoption of Proposition K, decedent continued to have the right to operate his taxicab, as before, and continued to have the right to lease his permit to others, as in fact he did. The only right which was removed from his taxicab permit was the right to transfer it to someone else.In these circumstances, we think there was no identifiable loss for purposes of section 165. In Beatty v. Commissioner,46 T.C. 835 (1966), the taxpayer held an Arizona liquor license. Such licenses were issued in limited number, were freely transferable, and did not have to be used in order to remain effective. The legislature of Arizona thereafter amended the law so as to prohibit the free transfer of liquor licenses, unless such transfer was done in connection with selling the entire business to which the license related.The right of leasing the licenses was also eliminated, and it was further *125 provided that the licenses would lapse if they were not used for a period of six months. In addition, the legislature authorized an increase in the number of licenses issued. As a result, the taxpayer contended that the value of his Arizona liquor license had been substantially reduced, and claimed a loss under section 165 for such alleged reduction in value. In rejecting taxpayer's claim, and holding that there was no closed and completed transaction for purposes of section 165, we said (46 T.C. at 841-842): Prior to the 1961 amendments, petitioners' license had three elements -- the right of free transfer, the right to lease, and the right to use in the liquor business. After the 1961 amendments, the right of transfer could still be exercised, albeit only in connection with a bulk sale of the entire business and stock in trade. The right to lease was eliminated.The right to use the license in the liquor business continued, perhaps in a somewhat weakened state, because of the increase in the number of licenses potentially allowable. The 1961 amendments debased the value of, but did not destroy, any of these rights, with the exception of the right of lease *126 (which petitioners have not put in issue). Whatever may be the quality of severability of rights of ownership in other situations (cf. Rev. Rul. 54-409, 1954-2 C.B. 174), we are not prepared to sever these rights from each other nor to herniate the right of sale and hold the hernia irreparable, as petitioners would have us do. We take as our text what we said in Louisiana Land & Exploration Co.,7 T.C. 507, 518 (1946), affd. 161 F.2d 842 (C.A. 5, 1947): We can * * * foresee innumerable administrative difficulties as a consequence of allowing a taxpayer, upon showing that an asset owned by him is valueless for one of several purposes for which it was acquired, to deduct the part of the purchase price which might be apportioned to that purpose. Moreover, to permit such a deduction would be to allow the taxpayer to make one asset into as many as there were contemplated uses for it, and would have the effect in many cases of nullifying the established rule that mere shrinkage in the value of an asset prior to closing of the transaction with respect thereto does not give rise to a deductible loss. See Edith K. Findley,46 B.T.A. 1219. *127 The approval of petitioner's contention would thus, in our view, constitute the adoption of a principle which is in conflict with the correct and long established interpretation of the loss provisions of the code and would lead to confusion in their administration. We hold that there was no closed transaction in 1961 so as to support the claimed deduction. Petitioner's loss, if any, must abide further events. [Footnote omitted.] [Emphasis in original.] See also Consolidated Freight Lines, Inc. v. Commissioner,37 B.T.A. 576 (1938), affd. 101 F.2d 813 (9th Cir. 1939), cert. denied 308 U.S. 562. And see further Reporter Publishing Co., Inc. v. Commissioner,201 F.2d 743, 744 (10th Cir. 1953), cert. denied 345 U.S. 993, affg. 18 T.C. 86 (1952), where the Court of Appeals said: A taxpayer is not chargeable with a capital gain resulting from an enhanced value of a capital asset while it is still being used in the business; neither may he take a deduction from gross income because of the diminution in value of such an asset while it is still a part of the business and is being used in the business. *128 Since there is no conflict in the decisions with respect to these principles of law, citing numerous decisions in support thereof would be superfluous and add nothing of value to the opinion. We think the above cases are dispositive of the issue presented here. The passage of Proposition K by the voters changed decedent's taxicab permit in only one respect: he could not thereafter sell or assign it. So far as the record shows, all his other rights remained the same, and in fact, beginning in 1978 and apparently extending to the time of his death in 1983, decedent derived substantial income from the leasing of his taxicab permit. That such permit continued to have value in decedent's trade or business is not to be doubted. We accordingly hold that there was no closed and completed transaction giving rise to a deductible loss within the meaning of section 165. [3]
*129 To give effect to the concessions which the parties have made on other issues, Decision will be entered under Rule 155.
Footnotes
1. The record does not disclose whether petitioner operated a taxicab under his permit personally from 1959 to 1978, or whether he leased it out for all or part of such period. For purposes of this case, however, it does not matter.↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
3. As we noted in Beatty v. Commissioner,46 T.C. 835, 842 n. 8, even if we could conclude that the various rights in the taxicab permit were severable, for purposes of section 165(a), there is nothing in this record to show what the fair market value of the permit was in 1979, nor how much of such value, or the stipulated cost basis, should be allocated to the right to transfer which was eliminated. Compare Consolidated Freight Lines, Inc. v. Commissioner,37 B.T.A. 576, 582 (1938), affd. 101 F.2d 813 (9th Cir. 1939), cert. denied 308 U.S. 562↩.